UNITED STATES DISTRICT COURT
NORTERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY T. DAWKINS | ) |
| Plaintiff | ) |
| and | ) |
| as Executive of the Estate of Kenneth Lilly for only the property located at 17807 Tanglewood Court Hazel Crest, Illinois 60429 | 1:13-cv-05464 Judge James F. Holderman Magistrate Judge Susan E. Cox |
| PRO-SE | )<br>) |
| Plaintiff | )<br>) |
| V. | )<br>) |
| DEUTSCHE BANK NATIONAL TRUST COMPANY AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W5 | )<br>)<br>)<br>)<br>) |
| AMC MORTGAGE SERVICES | )<br>) |
| LITTON LOAN SERVICING LP | )<br>) |
| Defendants | ) |

RECEIVED

JUL 3 1 2013

THOMAS G BRUTON
CLERK, U S DISTRICT COURT

## NOTICE OF FILING

**PLEASE TAKE NOTICE** that on the 31st of July, 2013, I filed with the Clerk of the United States District Court for the Northern district of Illinois, Eastern Division, the foregoing First Amended Complaint for Excessive Fees Charged by Servicer; Forbearance Agreement not Adhered by Servicer; Wrongful Foreclosure; Trustee under the Trust Deed was not the "Holder" of the note at the time of foreclosure; and Breaches of Contract in the note and deed of trust securing this loan.

                                        JEFFREY T. DAWKINS


Jeffrey T. Dawkins
439 W. 98th Street
Chicago Illinois 60628
708-955-4643

## COMPLAINT

(1). <u>Excessive Fees</u> charged by AMC Mortgages Services.

(2). <u>Forbearance Agreement</u> not adhered by Litton Loan Servicing LP

(3). <u>Wrongful Foreclosure</u> by Litton Loan Servicing LP; and Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5

(4). <u>Trustee under the Trust Deed</u>, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates', Series 2004-W5, was Not the "Holder" of the note.

(5). <u>Breaches of Contract</u> by AMC Mortgage Services; Litton Loan Servicing LP; and Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, Mortgage note and deed of trust securing the loan signed by Borrower and dated January 22, 2004; Excessive Fees; Forbearance Agreement; Wrongful Foreclosure; and Trustee under the trust deed was not the "Holder" of the note.

**NOW COMES PLAINTIFF,** Jeffrey T. Dawkins as Plaintiff and the Executive of the Estate of Plaintiff, Kenneth Lilly (herein after Jeffrey T. Dawkins) his brother for only the property located at 17807 Tanglewood Ct., Hazel Crest, Illinois 60429, in the above entitled cause and ALLEGES against DEFENDANTS, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5 (herein after Deutsche Bank); AMC Mortgage Services; and Litton Loan Servicing LP.

## INTRODUCTION

Plaintiff, Jeffrey T. Dawkins, brings this action to secure redress from unlawful Loan Servicer Excessive Fees; Loan Servicer not Adhered by the Forbearance Agreement; Wrongful Foreclosure; Trustee under the Trust Deed was not the "Holder" of the note; and Breaches of Contract in the note and deed of trust securing this loan; practices engaged by Defendants, Deutsche Bank; AMC Mortgage Services; and Litton Loan Servicing LP.

Plaintiff alleges violation of <u>Mortgage Note dated January 22, 2004, Doc # 0407840255, Section (14), (19)</u>; <u>Was there a default</u>; <u>Credit Counseling: 815 ILCS 137/100, Section (b), (d)</u>; <u>Part 15 or Article XV of the Code of Civil Procedure</u>; <u>Debt Management Plan</u>; <u>A Special Right to Cure Section (d) (e)</u>; <u>Wrongful Foreclosure</u>; <u>Trustee under Trust Deed was not the "Holder" of the note</u>; <u>Breaches in the note and deed of trust securing this loan</u>; <u>Common-Law Liability</u>; <u>"Unfair" and "Deceptive" Practices</u>; <u>Debt Collections within the FDCPA and similar state law</u>; <u>Assignment or other legal instrument, should had been attached to the complaint, 735 ILCS 5/2-606)</u>; <u>CFDBPA, duty to disclose material facts pertaining to a transaction</u>; <u>Federal Rules of Civil Procedure</u>; <u>Good Faith</u>; <u>815 ILCS 137/25</u>; and <u>815 ILCS 137/10</u>.

## ILLINOIS STATUE OF LIMITATION

(1). Written: 10 years, if any payments or new promise to pay was made during
that 10 year period, an action my commenced 10 years from the date
of the new payment or promise 735 ILCS 5/13-206

    (A). the new payment was in the amount of $5,000.00, on
March 5, 2007, for the forbearance agreement.

(2). Unlimited: as a defense to foreclosure in the nature of a recoupment or setoff
735 ILCS 5/13-207.

(3). Extension owing to Dismissal of previous Suit: Where a plaintiff starts an action
but Plaintiff claims are dismissed ultimately; the plaintiff may begin
new action within the greater of: One year of dismissal or the
remaining period of limitation, (735 Ill. Comp. Stat. 5/13 – 217 (2010).)

(4). Death of a party: (a) If a person entitled to bring an action before the
expiration of the time limited for the commencement there, and the
cause of action survives: (1) an action may be commenced by his or her
representative before expiration of that time, or within one year from
his or her death whichever date is the later; (735 ILCS 5/13 – 209).

## JURISDICTION

1. Jurisdiction of the Court is based upon diversity of citizenship.
2. Plaintiff is a citizen of the State of Illinois.
3. The Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed
Pass-Through Certificates, Series 2004-W5 is a private corporation whose corporate
headquarters is located at 1761 East St. Andrew Place, Santa Ana CA, 92705-4934
4. The Defendant, AMC Mortgage Services is a private corporation whose corporate
headquarters is located at 2677 North Main Street, Suite 140, Santa Ana, CA 92705 –
4934
5. The Defendant, Litton Loan Servicing LP is a private corporation whose corporate
headquarters is located at 4828 Loop Central Drive, Houston, TX 77081.

## VENUE

Venue is proper because all of the Defendants do business in the District and a substantial
part of the events that give rise to the claim occurred within the District as well as the
property involve is located within the District.

## FACTS

6. On or about January 23, 2004, Plaintiff, Kenneth Lilly consummated a real estate closing at Ticor Title Insurance Company located at 1147 W. 175th Street in Homewood Illinois 60430

7. Attached as "EXHIBIT A" is a true copy of the Mortgage

   Amount of the original indebtedness:

   (1) Original indebtedness: $144,000.00

   (2) Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

   LOT 108 IN HILLCREST SUBDIVISION 1ST ADDITION, BEING A SUBDIVISION OF PART OF THE SOUTHWEST ¼ OF THE NORTHWEST ¼ OF SECTION 36, TOWNSHIP 36 NORTH, RANGE 13 EAST OF THE THIR PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

   (3) Commonly Known as: 17807 Tanglewood Court, Hazel Crest, Illinois 60429

   (4) Tax Parcel Number; 28-36-112-012

8. On or about January 23, 2004 the loan was assigned, sold or transferred to AMC Mortgage Services.

9. On or about January 23, 2004, Plaintiff, Kenneth Lilly gave Plaintiff, Jeffrey T. Dawkins a quitclaimed deed for the property located at 17807 Tanglewood Court, Hazel Crest, Illinois 60429 (herein after The Tanglewood Property), it was to be recorded if something happen to Plaintiff, Kenneth Lilly.
   (See Exhibit B)

10. On or about May 1, 2005, Defendant, AMC Mortgage Services purchased Plaintiff's Kenneth Lilly Real Estate Taxes a month after taxes were due.

11. Plaintiff's real estate taxes were not included in the monthly mortgage payments but plaintiff did sign escrow papers for them to be included.

12. On or about June 1, 2005, Plaintiff's monthly mortgage payment drastitly increased from $1,001.95 to $2,142.37.
    (See Exhibit C)

13. The increase was $1,140.92 for the purchased real estate taxes plus interest charged by Defendant, AMC Mortgage Services.

14. Plaintiff's paid the new payment of $2,142.37 for approximately 5 months but began to fall behind on the monthly mortgage payments.

15. On or about October 18, 2005, Plaintiff, Jeffrey T. Dawkins called Defendant AMC Mortgage Services Customer Services Department at 866-299-9963 to discuss a possible payment plan to reduce the monthly mortgage payments.

16. Plaintiff spoke to Defendants Accountant Representative Jennifer Sea at ext 82459 to discuss the payment increase.

17. Defendants, Account Representative Jennifer Sea informed Plaintiff, Jeffrey Dawkins after going over the information that Plaintiff's monthly payment exceeded the permitted limits set for maximum loan charges. She also informed Plaintiff that she would send out a new escrow account disclosure statement & change of monthly mortgage payment notice.

18. On or about October 24, 2005, Plaintiff, Kenneth Lilly received the Escrow Account Disclosure Statement & Change of Payment Notice with a new monthly mortgage payment of $1,720.07.
(See Exhibit D)

19. On or about January 3, 2007, Defendant, AMC Mortgage Services assigned, sold or transferred the servicing of the loan to Litton Loan Servicing LP.
(See Exhibit E)

20. On or about March 4, 2007, Plaintiff, Jeffrey T. Dawkins called Defendant's Litton Loan Servicing LP Loan Work Out Department at 800-247-9727.

21. Plaintiff, Kenneth Lilly was not in foreclosure on March 4, 2007, but behind in payments due to the unfair practice acting by Defendant, AMC Mortgage Services.

22. On or about March 4, 2007, Plaintiff, Jeffrey T. Dawkins negotiated a Forbearance Agreement with Defendant, Litton Loan Servicing LP Loan Workout Representative Ricky at extension 8242.

23. The contractual Forbearance Agreement was to forward $5,000.00 to start the agreement and once the Defendant received the payment that would establish Plaintiff's new monthly payment date. The remaining of the overage payments would be divided equally over 12 months. The forbearance agreement would then be sent to Plaintiff, Kenneth Lilly to be signed.

24. On or about March 5, 2007, Plaintiff, Jeffrey T. Dawkins forwarded a payment of $5,000.00 to Defendant, Litton Loan Servicing LP through Western Union. (See Exhibit F)

25. On or about March 8, 2007, Plaintiff, Kenneth Lilly received the forbearance agreement, signed it and sent it back to Defendant, Litton Loan Servicing LP.

26. On or about March 15, 2007, Plaintiff, Kenneth Lilly received a billing statement from Defendant, Litton Loan Servicing LP, containing the $5,000.00 payment in accordance to the forbearance agreement. (See Exhibit G)

27. On or about March 15, 2007, Plaintiff, Kenneth Lilly received a Letter from Defendant, Litton Loan Servicing LP, about their records indicating that Plaintiff had fallen behind on his payments and a possible foreclosing acting taking place. (See Exhibit H)

28. On or about March 15, 2007, Plaintiff, Jeffrey T. Dawkins called Defendant, Litton Loan Servicing LP, Representative Ricky at a new extension 4223.

29. Plaintiff, Jeffrey T. Dawkins told Ricky that Plaintiff, Kenneth Lilly had received a letter stating that his mortgage payments were behind and foreclosure acting would begin soon on the Tanglewood Property.

30. Ricky, told Plaintiff to disregard the letter because the forbearance agreement was in place and showing in Defendant's, Litton Loan Servicing LP, computer system.

31. On or about April 1, 2007, Plaintiff, Jeffrey T. Dawkins called in the April monthly mortgage payment of $1,911.96 and was informed by Defendant Litton Loan Servicing LP that they could not accept the payment due to Plaintiff, Kenneth Lilly being in foreclosure.

32. On or about April 18, 2007, Defendant, Deutsche Bank National Trust Company, As Trustee for Asset-Backed Pass-Through Certificates, Series-W5, filed a Complaint to Foreclose on the Tanglewood Property Chancery No: CH 10641. (See Exhibit I)

33. The Mortgage Foreclosure Summons to each Defendants and Plaintiff, Jeffrey T. Dawkins was named as a defendant on Deutsche Bank National Trust Company, as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, Summons to the Chancery Division, case 07 CH 10841. (See Exhibit J)

34. On or about August 22, 2007, Argent Mortgage Company assignment to Ameriquest Mortgage Company
    (See Exhibit K)

35. On or about August 22, 2007, Ameriquest Mortgage Company assignment to Defendant, Deutsche Bank National Trust Company as Trustee for Assets-Backed Pass-Through Certificates, Series 2004-W5.
    (See Exhibit L)

36. Plaintiffs tried hard to resolve this matter with Defendant's, Litton Loan Servicing LP and Deutsche Bank but defendants continued the foreclosure process.

37. On or about February 2, 2008, Plaintiff, Kenneth Lilly named Plaintiff Jeffrey T. Dawkins his brother as the Executor of his Last Will and Testament over 17807 Tanglewood in Hazel Crest, Illinois 60429 because Plaintiff, Kenneth Lilly became stressed out and was hospitalized with congested heart failure and then became very sickly afterward.
    (See Exhibit M)

38. On or about February 21, 2008, Plaintiff, Jeffrey T. Dawkins filed IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS COUNTY DEPARTMENT-LAW DIVISION a Complaint, Case Number 2008-L-001988 against Defendants, Argent Mortgage Co, LLC., et al; Deutsche Bank National Trust Company, As Trustee For Asset-Backed Pass-Through Certificates, Series 2004-W5; Palace Home Mortgage; AMC Mortgage Services; and Litton Loan Servicing LP; for Excessive Fees Charged by Servicer; Forbearance not adhered by Servicer; Wrongful Foreclosure; Trustee not the "Holder" of the note nor mortgage; Predatory Lending; and Deceptive Mortgage Practice.
    (See Exhibit N)

39. On or about February 29, 2008, Defendant, Deutsche Bank National Trust Company, as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5 sold Plaintiff, Kenneth Lilly, Tanglewood Property at the Judicial Sale.
    (See Exhibit O)

40. On or about April 15, 2008, the sale of Plaintiff, Kenneth Lilly Tanglewood Property was confirmed.
    (See Exhibit P)

41. On or about July 26, 2009, Plaintiff, Kenneth Lilly passed away during a long hospital stay.
    (See Exhibit Q)

42. On or about June 8, 2011, Defendant's Deutsche Bank National Trust Company, as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5 and Litton Loan Servicing LP, was dismissed from Law Division Case Number 2008-L-001988 because the court had no jurisdiction over them.
(See Exhibit R)

## COUNT 1

(1). Excessive fees charged By AMC Mortgage Servicer;

43. Plaintiff, Jeffrey T. Dawkins hereby incorporates by reference Paragraphs 8 through 19 inclusive and every allegation included as through the same were alleged verbatim, and further alleges.

44. Mortgage Note dated January 22, 2004, Doc # 0407840255 Section (D) (H) and Paragraph 14: Loan Charges

(D) "Note" means the promissory note signed by Borrower and dated January 22, 2004

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

(14). <u>Loan Charges States</u>: Lender may charge Borrowers fees for services performed in connection with Borrower's default, for the purpose of protecting lender's interest in the property and rights under this Security Instrument, including, but not limited to attorney's fees, property inspection and valuation fees. In regard to any other fees the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. <u>Lender may not charges fees that are expressly prohibited by this Security Instrument or by Applicable Law.</u>

<u>If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the</u> amount necessary to reduce the charge to permitted limit; and (b) <u>any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct</u>

payment to Borrower. If a refund reduces principal, the reduction will
be treated as a partial prepayment without any prepayment charge
(whether or not a prepayment charge is provided for under the Note).
Borrower might have arising out of such overcharge.

45. That on or about January 3, 2007, Defendant, AMC Mortgage Services never refunded
Plaintiff, Kenneth Lilly by reducing the principal owed under the note or by making a
direct payment to borrower per the Mortgage Note.

46. That Plaintiffs on or about 5 months paid an overage monthly mortgage payment of
$423.30, which totaled $2116.50.

47. The Defendants acting caused a breach in the note and deed of trust securing this
loan; the "Note" means the promissory note signed by Borrower and dated January
22, 2004.

48. The unfair practice acting of Defendant, AMC Mortgage Services caused Plaintiffs to
fall behind on the mortgage payments and eventually caused a wrongful foreclosure.

49. As a direct and proximate result of Defendant, AMC Mortgage Services actions,
Plaintiff, Jeffrey T. Dawkins has been damaged in the approximate amount of
$2116.50, representing (5 months of overage payments)

WHEREFORE, Plaintiff requests that this Court:

A. Enter judgment for Plaintiff against Defendant in the amount of $6,349.50, which
represents (5 months of overage payments) (Three time the damages actually
sustained by Plaintiff as result of Defendant's actions); and

B. Enter judgment for Plaintiff and against Defendants for the costs of prosecuting this
action and Plaintiff's attorney's fees pursuant to ss5-12-180 of the Ordinance; and

C. Award Punitive Damages to Plaintiff in an appropriate amount; and

D. Grant such other relief as is just and proper.

## COUNT II

**(1).** Forbearance Agreement; **not adhered by Litton Loan Servicing LP;**

50. Plaintiff, Jeffrey T. Dawkins hereby incorporates by reference as part of Count II, Paragraphs 20 through 32 inclusive and every allegation included as through the same were alleged here verbatim, and further alleges:

51. Was there a Default? If the lender accepted irregular payments, the lenders must first reestablish strict compliance and give a reasonable time for performance before instituting foreclosure. This has been true in long line of real estate contract cases in which the courts have held that forfeiture will be waived unless there has been a notice of intention to require strict compliance, <u>Alabastro V. Wheaton National Bank</u>, 77 Ill.App.3d 359, 395 N.E.2d 1212, 32 Ill.Dec.831 (2d Dist. 1979)

52. Credit Counseling; 815 ILCS 137/100 provides; (b) a lender, servicer, or lenders' agent is notified in writing by an approved credit counselor and the approved credit counselor advises the lender, servicer, or lender, servicer, or lenders agent shall not institute legal action under Part 15 or Article XV of the Code of Civil Procedure for 30 days after the date of that notice. Only one such-day period of forbearance is allowed under this Section per subject loan.

53. Credit Counseling; 815 ILCS 137/100 provides; (d) If, within the 30-day period provided under subsection ©, the lender, servicer, or lender's agent, the approved credit counselor, and the borrower agree to a debt management plan, then the lender, servicer, or lender's agent shall not institute legal action under Part 15 of Article XV of the Code of Civil Procedure for as long as the debt management plan is complied with by the borrower.

    The agreed debt management plan must be in writing and signed by the lender, servicer, or lender's agent, the approved credit counselor, and the borrower. No modification of an approved debt management plan can be made without the mutual agreement of the lender, servicer or lender's agent, the approved credit counselor, and the borrower.

54. A special right to cure provides; (d) if a default is cured prior to the initiation of any action to foreclose or to seize the residence, the lender or assignee shall not institute a proceeding or other action for that default. If a default is cured after the initiation of any action, the lender or assignee shall take such steps as are necessary to terminate the action.

55. A special right to cure provides; (e) a lender or a lender's assignee of a high risk home loan that has the legal right to foreclose shall use the judicial foreclosure procedures provided by law. In such a proceeding, the borrower may assert the nonexistence of a default and any other claim or defense to acceleration and foreclosure, including any claim or defense shall be deemed a compulsory counterclaim.

56. It is often difficult for mortgage servicers, particularly if they are not the original lenders, to prove the true status of an account. Affidavits that are conclusory and insufficient are often submitted to prove default. Manufacturers & Traders Trust Co. v. Medina, No. 01 C 768, 2001 U.S. Dist. LEXIS 20409 (N.D.Ill. Dec. 5, 2001)

57. There are reported decisions in which it turned out that the lender's right hand did not know what the left hand was doing and that there was really no basis for a claimed default. Hart v. GMAC Mortgage Corp. (In re Hart), 246 B.R. 709 (Bankr. D.Mass. 2000)

58. In which the court found that the lender had foreclosed too quickly and that the default had been cured. Frequently, mortgage servicers attempt to service loans without consulting the loan documents with the result that they depart from their terms.

59. In other cases, mortgage companies have been unable to prove that they actually own the loan and give notice of acceleration as required by the loan documents. In re Kitts, 274 B.R. 491 (Bankr. E.D.Tenn. 2002).

60. An assignee who acquires a debt that is already in default, either for its own account or for purposes of collection, meets the definition of a "debt collector" under the FDCPA. 15 U.S.C. ss1692a (6); Schlosser v. Fairbanks Capital Corp., 323 F.3d 534 (7th Cir. 2003);

61. Firms in the business of acquiring and enforcing post-foreclosure deficiencies, second mortgages after foreclosure of the first, and charged-off mortgage loans are "debt collectors within the FDCPA and similar state laws.

62. The original lender's exempt from being defined as a "debt collector," as is someone who "services" a loan that is not claimed to be in default. 15 U.S.C. ssss 1692a 96) (A), 1692a (6) (F).

63. If the entity qualifies as a debt collector, the next issue is whether the communications at issue were made "in connection with the collection of any debt." 15 U.S.C. ssss 1692c (A), 1692c (B), 1692e, 1692g. This has been the principal issue in most of the cases involving foreclosure related collection activities.

64. Mortgage Note dated January 22, 2004 Doc# 0407840255 Sections (D), (H) paragraph (12), (19).

65. "Note" means the promissory note signed by Borrower and dated January 22, 2004.

66. "Applicable Law" means all controlling applicable federal, state and local statutes, regulations, ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final, non-appealable judicial opinions.

67. (12) Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security instrument granted by Lender to Borrower or any Successor in interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrowers or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than due, shall not be a waiver of or preclude the exercise of any right or remedy.

68. (19) Borrower's Right to Reinstate after Acceleration. If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorney's fees, property inspection and valuation fees and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lenders' interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums and expenses in one of more of the following forms, as selected by Lender; (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

69. Under Illinois law, an assignee of a note and mortgage who is not a holder in due course takes it subject to whatever infirmities it has in the hands of the original holder. "The rule is that an assignee of a contract takes it subject to the defenses which existed against the assignor at the time of the assignment." <u>Allis-Chalmers Credit Corp. v. McCormick</u>, 30 Ill.App3d 423, 331 N.E.2d 832, 833 (4th Dist. 1975)

70. That on March 4, 2007, Plaintiff, Jeffrey T. Dawkins negotiated the contractual Forbearance Agreement, to forward $5,000.00 to start the agreement and once Defendant; Litton Loan Servicing LP received the payment that would establish Plaintiff's new monthly payment date, the remaining of the overage payments would be divided equally over 12 months, and then the Forbearance Agreement would be sent to Plaintiff, Kenneth Lilly to be signed. "This created the offer and acceptance"

71. That on March 5, 2007, Plaintiff, Jeffrey T. Dawkins forwarded a payment of $5,000.00 to Defendant, Litton Loan Servicing LP through Western Union and Defendant, Litton Loan Servicing LP accepted the payment. "This created the consideration"

72. That on March 8, 2007, Plaintiff, Kenneth Lilly received the Forbearance Agreement, signed it and sent it back to Defendant, Litton Loan Servicing LP. "This created the forbearance agreement contract"

73. That on March 15, 2007, Defendant, Litton Loan Servicing LP billing statement form enclosed the $5,000.00 payment in accordance to the Forbearance Agreement.

74. That on March 15, 2007, Plaintiff, Kenneth Lilly was not in default when he received that Letter from Defendant, Litton Loan Servicing LP, stating Defendant records indicated that Plaintiff had fallen behind on his payments.

75. That on March 5, 2007, Plaintiffs cured the default prior to the initiation of any action to foreclose or to seize the residence of Plaintiffs. The Defendant's Litton Loan Servicing LP and Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, should not have instituted the proceeding or other action for that default.

76. That on March 5, 2007, Defendant, Litton Loan Servicing LP accepted irregular payments, Defendant, must first reestablished strict compliance and gave a reasonable time for performance before instituting foreclosure on April 18, 2007.

77. Defendant's Litton Loan Servicing LP and Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, right hand did not know what the left hand was doing and that there was really no basis for a claimed default.

78. That Defendant's Litton Loan Servicing LP and Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5 acting was a violation of breach of contract of the Forbearance Agreement and the Mortgage Note dated January 22, 2004, DOC # 0407840255, Section (19).

79. Defendant, committed fraud, oppression or malice in its wrongful conduct.

80. As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in the approximate amount of $5,000.00, representing (Payment to start the Forbearance Agreement and acceptance by Defendant but they chose to ignore so as to proceed with the foreclosure).

WHEREFORE, Plaintiff request that this Court:

A. Enter judgment for the Plaintiff against Defendants in the amount of $15,000.00, which represents (Payment to start the Forbearance Agreement and the acceptance by Defendant but they chose to ignore so as to proceed with the foreclosure; Defendant, committed fraud, oppression or malice in its wrongful conduct) (Three times the damages actually sustained by Plaintiff as result of Defendant's action); and

B. Enter judgment for Plaintiff and against Defendants for the costs of prosecuting this action and Plaintiff's reasonable attorney's fees pursuant to ss 5-12-180 of the Ordinance; and

C. Award Punitive Damages to Plaintiff in an appropriate amount; and

D. Grant such other relief as is just and proper.

## COUNT III

(1). <u>Wrongful Foreclosure</u>; by Litton Loan Servicing LP and Deutsche Bank
National Trust Company as Trustee for Asset-Backed
Pass-Through Certificates, Series 2004-W5,
because Plaintiffs, **was not in default**.

81. Plaintiff, Jeffrey T. Dawkins hereby incorporates by reference as part of Count III,
Paragraphs 23 through 32 inclusive and every allegation included as through the
same were alleged here verbatim, and further alleges:

82. "Wrongful foreclosure" <u>Smith v. Keycorp Mortgage, Inc.</u> 151 B.R. 870

83. That on April 18, 2007, Defendant, Deutsche Bank National Trust Company, As Trustee
for Asset-Backed Pass-Through Certificates, Series-W5, filed a Complaint to Foreclose
on the Tanglewood Property. Chancery No: CH 10641.

84. Plaintiff's was not in default on April 18, 2007, due to the forbearance agreement
signed on March 8, 2007.

85. The courts found that some lenders had foreclosed too quickly and that the default
had been cured. Frequently, mortgage servicers attempt to service loans without
consulting the loan documents with the result that they depart from their terms.

86. That Defendant's Deutsche Bank National Trust Company, As Trustee for Asset-Backed
Pass-Through Certificates, Series-W5, foreclosed too quickly on the Tanglewood
Property because the default had been cured.

87. That Defendant's Deutsche Bank National Trust Company, as Trustee for Asset-Backed
Pass-Through Certificates, Series-W5; and Litton Loan Servicing LP; violated the <u>Credit
Counseling Act</u>; 815 ILCS 137/100 provides; (d) If, within the 30-day period provided
under subsection ©, the lender, servicer, or lender's agent, the approved credit
counselor, and the borrower agreed to a debt management plan, then the lender,
servicer, or lender's agent shall not institute legal action under Part 15 of Article XV of
the Code of Civil Procedure for as long as the debt management plan is complied with
by the borrower.

88. Firms in the business of acquiring and enforcing post-foreclosure deficiencies, second
mortgages after foreclosure of the first, and charged-off mortgage loans are "debt
collectors within the FDCPA and similar state laws.

89. That Defendant's Deutsche Bank National Trust Company As Trustee for Asset-Backed Pass-Through Certificates, Series-W5 and Litton Loan Servicing LP, qualifies as a debt collectors, the next issue is that Defendants communications at issue were not made "in connection with the collection of the debt." 15 U.S.C. ssss 1692c (A), 1692c (B), 1692e, 1692g. This has been the principal issue in most of the cases involving foreclosure related collection activities.

90. In other cases, mortgage companies have been unable to prove that they actually own the loan and give notice of acceleration as required by the loan documents. In re Kitts, 274 B.R. 491 (Bankr. E.D.Tenn. 2002).

91. That Defendant, Deutsche Bank National Trust Company As Trustee for Asset-Backed Pass-Through Certificates, Series-W5, did not establish whether they actually owned the loan to have gave the notice of acceleration as required by the loan documents on April 18, 2007.

92. Under Illinois law, an assignee of a note and mortgage who is not a holder in due course takes it subject to whatever infirmities it has in the hands of the original holder. "The rule is that an assignee of a contract takes it subject to the defenses which existed against the assignor at the time of the assignment." Allis-Chalmers Credit Corp. v. McCormick, 30 Ill.App3d 423, 331 N.E.2d 832, 833 (4th Dist. 1975)

93. That Defendant, Deutsche Bank National Trust Company As Trustee for Asset-Backed Pass-Through Certificates, Series-W5, was the assignee of the contract and took it subject to the defenses that existed against Argent Mortgage Company at the time of the assignment on August 22, 2007, "see exhibit".

94. That Plaintiffs was seriously injured and the Defendants unjustly enriched by the wrongful foreclosure.

95. That Defendants committed fraud, oppression or malice in its wrongful conduct.

96. As a direct and proximate result of Defendant's aforementioned actions, Plaintiff has been damaged in the amount of $163,812.83, representing (The loss of Plaintiff home on 17807 Tanglewood, Hazel Crest, Illinois 60429 from wrongful foreclosure default amount).

**WHEREFORE,** Plaintiff, Jeffrey T. Dawkins requests that this Court:

A. Enter judgment for Plaintiff against Defendants in the amount of $491,438.49, which represents (Wrongful Foreclosure because there was no default on the Tanglewood Property; Defendant foresaw and chose to ignore so as to proceed with the foreclosure, Defendant committed fraud, oppression or malice in its wrongful conduct) (Three time the damages actually sustained by Plaintiff as result of Defendant's actions); and

B. Enter judgment for Plaintiff and against Defendants for the costs of prosecuting this action and Plaintiff's reasonable attorney's fees pursuant to ss 5-12-180 of the Ordinance; and

C. Award Punitive Damages to Plaintiff in an appropriate amount; and

D. Grant such other relief as is just and proper.

## COUNT IV

(1). Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, **under the Trust Deed was not the "Holder" of the note.**

97. Plaintiff, Jeffrey T. Dawkins hereby incorporates by reference as part of Count IV, Paragraphs 32 through 34 inclusive and every allegation included as through the same were alleged here verbatim, and further alleges:

98. Illinois allows suit to be filed by "the legal holder of the indebtness, a pledge, an agent or trustee under a trust deed.

99. However, it is still necessary for the Plaintiff to allege and prove facts showing its status as agent (Bayview Loan Servicing L.L.C. v. Nelson, 382 Ill.App.3d 1184, 890 N.E.2d 940 322 Ill.Dec.21 (5th Dist. 2008).

100.   If that status depends on an assignment or other legal instrument, it should be attached to the complaint 735 ILCS 5/2-606; Candice Co. v. Ricketts, 281 Ill.App.3d 359, 666 N.E.2d 722, 724, 217 Ill.Dec.53 (1st Dist 1996).

101.   Many foreclosure complaints simply quote the statutory language and do not attach documents showing that the requisite status exists.

102.   Common-Law Liability; Mortgage Companies often claim to be holders in due course. They rarely are. The first problem is that mortgage loan documents are generally not transferred by endorsement on the note. This is essential to make one a "holder." Adams v. Madison Realty & Development, Inc. 853 F.2d 163 (3d Cir. 1988).

103.   Many mortgage foreclosure cases appear to be brought by nominal parties who do not qualify as the "real party in interest" in federal Court, pursuant to the Federal Rules of Civil Procedure, and may not have standing under state/law, Fed.R.Civ.P.17.

104.   A number of recent Federal cases have dismissed foreclosure suits in which the Plaintiff did not allege that it owned the note and prior to filing suit. In re Foreclosure Cases, 1:07 CV2282, 2007 U.S. Dist. LEXIS 84011 (N.D. Ohio Oct 31, 2007), foreclosure complaint alleged that the Named Plaintiff were the holders and owners of the notes and mortgages but they were not the original payees and there was nothing showing that the plaintiffs owned the notes and mortgages at the time suit was filed.

105.     In the Federal Court, pursuant to the Federal Rules of Civil Procedure, and may not have standing under state law. Fed.R.Civ.P.17. a number of recent federal cases have dismissed foreclosure suits in which plaintiff did not allege that it owned the note and mortgage prior to filing suit.

106.     This comes from the Federal Courts; (1) there is no doubt every decision made by a financial institution in the foreclosure process is driven by money. And the legal work which flows from winning the financial institution's favor is highly lucrative. There nothing improper of wrong with financial institutions or law firms making a profit – to the contrary, they should be rewarded for sound business and legal practices. (2) However, unchallenged by underfinanced opponents, the institutions worry less about jurisdictional requirements and more about maximizing returns. Unlike the focus of financial institutions, the federal courts must act as gatekeepers, assuring that only those who meet diversity and standing requirements are allowed to pass through. (3) Counsel for the institutions are not without legal argument to support their position, but their arguments fall woefully short of justifying their premature filings, and utterly fail to satisfy their standing and jurisdictional burdens. (4) The institutions seem to adopt the attitude that since they have been doing this for so long, unchallenged, this practice equates with legal compliance.

107.     Finally put to the test, their weak legal arguments compel the Court to stop them at the gate. 2007 U.S. Dist. LEXIS 84011 at *8 – 9.

108.     That on April 18, 2007, Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, filed a Complaint for foreclosure with the statutory language but did not attach assignment or other legal instrument showing that the requisite status existed, "see exhibit".

109.     That on April 18, 2007, Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, under the trust deed on the Tanglewood property was not the "Holder" of the Note.

110.     That Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, violated the Common-Law Liability, where mortgage companies often claim to be holders in due course. They rarely are. The first problem is that mortgage loan documents are generally not transferred by endorsement on the note. This is essential to make a "Holder."

111.     The Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, violated the Federal Rules of Civil Procedure, where many mortgage foreclosure cases appear to be brought by nominal parties who do not qualify as the "real party in interest" in Federal Court, pursuant to the federal Rules of Civil Procedure, and may not have standing under state/law.

112.    That on August 22, 2007, Argent Mortgage Company Assignment to Ameriquest Mortgage Company, "see exhibit".

113.    That on August 22, 2007, Ameriquest Mortgage Company Assignment to Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, "see exhibit".

114.    That Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, did not becomes the "real party of interest of the note and mortgage on the Tanglewood Property" until August 22, 2007.

115.    Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, did not become the "real party of interest" until four months and four days after the filing of foreclosure on April 18, 2007.

116.    Consequent effects on the Plaintiffs that the Defendant, foresaw and chose to ignore so as to proceed with the foreclosure on the Tanglewood Property.

117.    Costs incurred in Plaintiff changing residents.

118.    The resultant credit unworthiness that Plaintiff suffered due to the foreclosure; this made it difficult for the Plaintiff to access mortgage services.

119.    Loss of the Tanglewood Property value when it sold to make claim on the defaults in mortgage payments; it is often the result of selling the home/property at a great reduced price, "see exhibit".

120.    Illegal, fraudulent or willfully oppressive sale of the Tanglewood Property, under a power of sale contained in a mortgage or deed or court judicial proceeding.

121.    A number of recent Federal cases have dismissed foreclosure suits in which the Plaintiff did not allege that it owned the note and prior to filing suit. In re Foreclosure Cases, 1:07 CV2282, 2007 U.S. Dist. LEXIS 84011 (N.D. Ohio Oct 31, 2007), foreclosure complaint alleged that the Named Plaintiff were the holders and owners of the notes and mortgages but they were not the original payees and there was nothing showing that the plaintiffs owned the notes and mortgages at the time suit was filed.

122.    Judge Christopher A. Boyko of the Eastern Ohio United States District Court, on October 31, 2007, dismissed 14 Defendant, Deutsche Bank-filed foreclosures in a ruling based on lack of standing for not owning/holding the mortgage loan at the time the lawsuits were filed.

123.    As a direct and proximate result of Defendant's actions, Plaintiff has been damaged in the approximate amount of $3,000,000.00, representing (Defendant not being the "real party of interest" when foreclosing on the Tanglewood Property after they foresaw and chose to ignore so as to proceed with the foreclosure; Defendant committed fraud, oppression or malice in its wrongful conduct).

**WHEREFORE,** Plaintiff requests that this Court:

A. Enter judgment for Plaintiff against Defendant in the amount of $9,000,000.00, which represents (Defendant not being the "real party of interest" when foreclosing on the Tanglewood Property after they foresaw and chose to ignore so as to proceed with the foreclosure; Defendant, committed fraud, oppression or malice in its wrongful conduct; Plaintiff costs incurred in changing residents; inconvenience; suffering, etc.) (Three time the damages actually sustained by Plaintiff as result of Defendant's actions); and

B. Enter judgment for Plaintiff and against Defendants for the costs of prosecuting this action and Plaintiff's reasonable attorney's fees pursuant to ss 5-12-180 of the Ordinance; and

C. Award Punitive Damages to Plaintiff in an appropriate amount; and

D. Grant such other relief as is just and proper.

## COUNT V

(1). Breaches of Contract in the note and deed of trust securing this loan
(Mortgage Note signed by Borrower and dated January 22, 2004,
Doc # 0407840255, Sections (D), (H) and Paragraphs (14), (19)).

124.     Plaintiff, Jeffrey T. Dawkins hereby incorporates by reference as part of Count
V, Paragraphs 10 through 40 inclusive and every allegation included as through the
same were alleged here verbatim, and further alleges:

125.     Substantive requirement for Breach of Contract: The parties to a contract have
a duty to honor their obligations there under and they also have an implied duty of
good faith and fair dealing. Saunders v. Michigan Ave National Bank, 278 Ill.App.3d
307, 315, 662 N.E.2d 602 (1st Dist. 1996). Did the broker or lender fail to live up to its
contractual duty? Did it frustrate the borrower's ability to perform on (or Reinstate)
the contract? If so, it may have breached the contract or its duty of good faith and fair
dealing, which is implied in every contract. Hill v. Harris Bank, 329 Ill.App.3d 705, 710
(1st Dist. 2002).

126.     What is considering a breach of Contract? A breach contract essentially means
that one party fails to meet the terms and conditions of a contract and as a result the
other party is owed damages. The court can award compensatory damages, specific
performance, attorney fees, and legal costs as well as punitive damages which are
meant to punish the breaching party.

127.     That Defendant, AMC Mortgage Services, committed a breach in the note and
deed of trust securing this loan on January 3, 2007, in violation of excessive fees
charged that exceeded the permitted limits set for maximum loan charges and never
refunded overages to the plaintiff.

128.     That Defendant, Litton Loan Servicing LP, committed a breach in the note and
deed of trust securing this loan on March 5, 2007, in violation of forbearance
agreement that If the lender accepted irregular payments, the lenders must first
reestablish strict compliance and give a reasonable time for performance before
instituting foreclosure.

129.     That Defendants, Litton Loan Servicing LP and Deutsche Bank National Trust
Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5
committed a breach in the note and deed of trust securing this loan on April 18, 2007,
in violation of wrongful foreclosure, that if the Credit Counseling Act; 815 ILCS
137/100 provides; (d) If, within the 30-day period provided under subsection ©, the
lender, servicer, or lender's agent, the approved credit counselor, and the borrower
agreed to a debt management plan, then the lender, servicer, or lender's agent shall

not institute legal action under Part 15 of Article XV of the Code of Civil Procedure for as long as the debt management plan is complied with by the borrower.

130. That Defendant, Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5, committed a breach in the note and deed of trust securing this loan on April 18, 2007, because under the trust deed the defendant was not the "Holder" of the note, it was necessary for defendant to allege and prove facts showing its status as agent and that status depended on an assignment or other legal instruments, and defendant did not attached it to the complaint, 735 ILCS 5/2-606.

131. That AMC Mortgage Services, Litton Loan Servicing LP, and Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5; committed breaches of Contract in the note and deed of trust securing this loan by violating excessive fees charged by servicer; a forbearance agreement not adhered by servicer; wrongful foreclosure; and Trustee under the trust deed not the "Holder" of the note or mortgage when the Complaint of Foreclosure was filed on April 18, 2007 on the property located at 17807 Tanglewood Ct., Hazel Crest, Illinois 60429.

132. As a direct and proximate result of Defendant's actions, Plaintiffs' has been damaged in the approximate amount of $2,000,000.00, representing (All 4 counts of Defendants breaches of Contract in the note and deed of trust securing this loan; Defendants committed fraud, oppression or malice in its wrongful conduct).

WHEREFORE, Plaintiff requests that this Court:

A. Enter judgment for Plaintiff against Defendant in the amount of $6,000,000.00, which represents (All 4 Counts of Defendants Breaches of Contract in the note and deed of trust securing this loan; Award Compensatory Damages; Defendants, committed fraud, oppression or malice in its wrongful conduct; inconvenience; pain and suffering, etc.) (Three time the damages actually sustained by Plaintiff as result of Defendant's actions); and

B. Enter judgment for Plaintiff and against Defendants for the costs of prosecuting this action and Plaintiff's reasonable attorney's fees pursuant to ss 5-12-180 of the Ordinance; and

C. Award Punitive Damages to Plaintiff in an appropriate amount; and

D. Grant such other relief as is just and proper.

## SEVERE and EXTREME ANXIETY & EMOTIONAL DISTRESS

**133.**     In engaging in the foregoing acts and omissions of Defendants, **intended to cause, or recklessly disregarded the high probability of causing, Plaintiffs to suffer severe anxiety and emotional distress.**

**134.**     The foregoing acts and omissions of Defendants were extreme and **outrageous conduct exceeding the bounds of humane treatment.**

**135.**     That Plaintiff, Kenneth Lilly, suffered severe anxiety and **extreme emotional distress** from the consummation of this loan, dated January 23, 2004, **for the property located at 17807 Tanglewood, Hazel Crest, Illinois 60429, until his death on July 26,** 2009.

**136.**     That Plaintiff, Kenneth Lilly was also injured as a result of his **credit being injured.** His credit reputation had been injured and he had been humiliated and embarrassed and had to carry this to his grave.

**137.**     That Plaintiff, Jeffrey T. Dawkins and his family are still suffering **severe and emotional distress from 2004 until Now, after being humiliated and embarrassed!**

**138.**     That Defendant's was presented this same case when it was filed in **the Law Division and they continue to move forward with the foreclosure in the Chancery Division.**

**139.**     That Defendant's was dismissed out of the Law Division Court, once the case **was transferred to a new Judge, Joan E. Powell by the Defendants request. The first Judge, Barbara A. McDonald told Defendant's, Counsel, Noonan & Lieberman LTD,** that she was not going to allow them to be dismissed.

**140.**     The Consumer Fraud and Deceptive Business Practices Act makes **unlawful both "deceptive" and "Unfair" practices. 815 ILCS 505/2. The basic elements of a deception claim are (1) a deceptive act or practice; (2) at least, if an omission is concerned, the defendant's intent that the plaintiff relied on the deception; and (3) that the deception occurred in the course of conduct involving trade or commerce.** Vance v. National Benefit Ass'n, No. 99 C 2627, 1999 U.S.Dist. LEXIS 13846 at *13 (N.D.Ill. Aug. 26, 1999)

**141.**     The test of "deception" is whether a representation **"creates 'the likelihood of deception or (has) the capacity to deceive'" the persons exposed to the practice in the particular case.** Elder v. Coronet Insurance Co., 201 Ill.App.3d 733, 558 N.E.2d 1312, 1321, 146 Ill.Dec. 978 (1st Dist. 1990)

142.     The CFDBPA imposes an affirmative duty to disclose material facts pertaining to a transaction: "Under the Act the omission of any material fact is deceptive conduct." Crowder v. Bob Oberling Enterprises, Inc., 148 Ill.App.3d 313,. 499 N.E.2d 115, 118, 101 Ill.Dec. 748 (4th Dist. 1986). See also Simeon Management Corp. v. Federal Trade Commission, 579 F.2d 1137, 1145 (9th Cir. 1978).

143.     Unless expressly disclaimed every contract in Illinois includes an implied obligation of good faith and fair dealing. Falk v. Northern Trust Co., 327 Ill.App.3d 101, 763 N.E.2d 380, 261 Ill.Dec 410 (1st Dist. 2001).

144.     Good faith. "A lender must act in good faith in all relations with a borrower, including but not limited to, transferring, dealing in, offering, or making a high risk home loan." 815 ILCS 137/25, "Good faith" is defined as "honesty in fact in the conduct or transaction concerned." 815 ILCS 137/10

145.     While this covenant does not override express contract provisions, it limits the exercise of discretion by a party to avoid unfair surprise and oppression (Chemical Bank v. Paul, 244 Ill.App.3d 772, 614 N.E.2d 436, 185 Ill.Dec. 302 (1st Dist. 1993)

146.     The prohibitions of "unfair" and "deceptive" practices are distinct. Robinson v. Toyota Motor Credit Corp., 201 Ill.2d 403, 775 N.E.2d 951, 266 Ill.Dec. 879 (2002); Elder v. Coronet Insurance Co., 201 Ill.App.3d 733, 558 N.E.2d 1312, 146 Ill.Dec. 978 (1st Dist 1990). In determining whether a practice is "unfair," both federal and state law consider

   (1) Whether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statues, the common law, or otherwise --- whether, in other words, it is within at least the penumbra of some common-law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) Whether it causes substantial injury to consumers (or competitors or other businessmen). Federal Trade Commission v. Sperry & Hutchinson Co., 405 U.S 233, 31 L.Ed.2d 170, 92 S.Ct. 898, 905 n.5 (1972), quoting 29 Fed.Reg. 7317, 8355 (May 28, 1964).

147.     Mortgage Practices Challenged Under Consumer Fraud and Deceptive Business Practices Act; "Wrongful foreclosure." Smith v. Keycorp Mortgage, Inc., 151 B.R. 870 (N.D.Ill. 1993).

WHEREFORE, Plaintiff prays that this Court:

A. Enter judgment for Plaintiff and Defendants in the amount of $2,000,000.00, as damages for severe and extreme anxiety and emotional distress; and

B. Grant such other and further relief as is just and proper.


Respectfully Submitted

*Jeffrey T. Dawkins*

Jeffrey T. Dawkins
Pro-Se


Jeffrey T. Dawkins
439 W. 98th Street
Chicago, Illinois 60628


## VERIFICATION


I, Jeffrey T. Dawkins, being first duly sworn, on oath, depose and state, under penalties as provided pursuant to 735 ILCS 5/1-109, that I am the Plaintiff in the attached Complaint and Motion, and that the statements set forth therein are true an accurate to the best of my knowledge, except as to matters therein stated to be upon information and belief, and such matters I depose and state as aforesaid that I verily believe the same to be true.


*Jeffrey T. Dawkins*
(S)


Subscribed and sworn to before me
This 31 day of July , 2013

*Ruby Morales*
NOTARY PUBLIC

"OFFICIAL SEAL"
RUBY MORALES
Notary Public, State of Illinois
My Commission Expires April 02, 2014

Exhibit # _____ **A**

Return To:

Argent Mortgage Company, LLC
P.O. Box 14130,
Orange, CA 92863-1530

Doc#: 0407840255
Eugene "Gene" Moore Fee: $80.00
Cook County Recorder of Deeds
Date: 03/18/2004 02:31 PM Pg: 1 of 19

Prepared By:Argent Mortgage Company, LLC

Thomas Popp II
2550 Golf Road, East Tower
Floor #10,Rolling Meadows,
IL 60008

TICOR TITLE 535497

————————————[Space Above This Line For Recording Data]————————————

# MORTGAGE

## DEFINITIONS

Words used in multiple sections of this document are defined below and other words are defined in Sections 3, 11, 13, 18, 20 and 21. Certain rules regarding the usage of words used in this document are also provided in Section 16.

(A) "Security Instrument" means this document, which is dated January 22, 2004
together with all Riders to this document.
(B) "Borrower" is KENNETH LILLY, An Unmarried Man

Borrower is the mortgagor under this Security Instrument.
(C) "Lender" is Argent Mortgage Company, LLC

Lender is a Corporation
organized and existing under the laws of Delaware

0054421797-9701

ILLINOIS - Single Family - Fannie Mae/Freddie Mac UNIFORM INSTRUMENT        Form 3014  1/01

-6(IL) (0005)
Page 1 of 15        Initials: XKL

VMP MORTGAGE FORMS - (800)521-7291

01/22/2004 8:43:19 AM


BOX 15

 **TICOR TITLE INSURANCE COMPANY**

**ORDER NUMBER:** 2000    000535297 OC
**STREET ADDRESS:** 17807 S. TANGLEWOOD
**CITY:** HAZEL CREST          **COUNTY:** COOK COUNTY
**TAX NUMBER:** 28-36-112-012-0000

**LEGAL DESCRIPTION:**

LOT 108 IN HILLCREST SUBDIVISION 1ST ADDITION, BEING A SUBDIVISION OF PART OF
THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 36, TOWNSHIP 36 NORTH, RANGE
13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS

LEGALD

Lender's address is One City Boulevard West  Orange, CA 92868

Lender is the mortgagee under this Security Instrument.
(D) "Note" means the promissory note signed by Borrower and dated January 22, 2004
The Note states that Borrower owes Lender one hundred forty-four thousand and 00/100
Dollars

(U.S. $144,000.00        ) plus interest. Borrower has promised to pay this debt in regular Periodic
Payments and to pay the debt in full not later than February 1, 2034
(E) "Property" means the property that is described below under the heading "Transfer of Rights in the
Property."
(F) "Loan" means the debt evidenced by the Note, plus interest, any prepayment charges and late charges
due under the Note, and all sums due under this Security Instrument, plus interest.
(G) "Riders" means all Riders to this Security Instrument that are executed by Borrower. The following
Riders are to be executed by Borrower [check box as applicable]:

[X] Adjustable Rate Rider   [ ] Condominium Rider              [ ] Second Home Rider
[ ] Balloon Rider           [ ] Planned Unit Development Rider [ ] 1-4 Family Rider
[ ] VA Rider                [ ] Biweekly Payment Rider         [ ] Other(s) [specify]

(H) "Applicable Law" means all controlling applicable federal, state and local statutes, regulations,
ordinances and administrative rules and orders (that have the effect of law) as well as all applicable final,
non-appealable judicial opinions.
(I) "Community Association Dues, Fees, and Assessments" means all dues, fees, assessments and other
charges that are imposed on Borrower or the Property by a condominium association, homeowners
association or similar organization.
(J) "Electronic Funds Transfer" means any transfer of funds, other than a transaction originated by
check, draft, or similar paper instrument, which is initiated through an electronic terminal, telephonic
instrument, computer, or magnetic tape so as to order, instruct, or authorize a financial institution to debit
or credit an account. Such term includes, but is not limited to, point-of-sale transfers, automated teller
machine transactions, transfers initiated by telephone, wire transfers, and automated clearinghouse
transfers.
(K) "Escrow Items" means those items that are described in Section 3.
(L) "Miscellaneous Proceeds" means any compensation, settlement, award of damages, or proceeds paid
by any third party (other than insurance proceeds paid under the coverages described in Section 5) for: (i)
damage to, or destruction of, the Property; (ii) condemnation or other taking of all or any part of the
Property; (iii) conveyance in lieu of condemnation; or (iv) misrepresentations of, or omissions as to, the
value and/or condition of the Property.
(M) "Mortgage Insurance" means insurance protecting Lender against the nonpayment of, or default on,
the Loan.
(N) "Periodic Payment" means the regularly scheduled amount due for (i) principal and interest under the
Note, plus (ii) any amounts under Section 3 of this Security Instrument.
(O) "RESPA" means the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its
implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to
time, or any additional or successor legislation or regulation that governs the same subject matter. As used
in this Security Instrument, "RESPA" refers to all requirements and restrictions that are imposed in regard
to a "federally related mortgage loan" even if the Loan does not qualify as a "federally related mortgage
loan" under RESPA.

0054621797 - 9701
Initials: _____

-6(IL) (0005)        Page 2 of 15      01/22/2004 8:43:19      Form 3014  1/01

**(P) "Successor in Interest of Borrower"** means any party that has taken title to the Property, whether or not that party has assumed Borrower's obligations under the Note and/or this Security Instrument.

TRANSFER OF RIGHTS IN THE PROPERTY

This Security Instrument secures to Lender: (i) the repayment of the Loan, and all renewals, extensions and modifications of the Note; and (ii) the performance of Borrower's covenants and agreements under this Security Instrument and the Note. For this purpose, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns, the following described property located in the County                                                           [Type of Recording Jurisdiction]

of COOK                                          [Name of Recording Jurisdiction]:

LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF:

Parcel ID Number: 28-36-112-012-0000                which currently has the address of
17807 S. TANGLEWOOD                                                                    [Street]
HAZEL CREST                                     [City], Illinois 60429          [Zip Code]
("Property Address"):

   TOGETHER WITH all the improvements now or hereafter erected on the property, and all easements, appurtenances, and fixtures now or hereafter a part of the property. All replacements and additions shall also be covered by this Security Instrument. All of the foregoing is referred to in this Security Instrument as the "Property."

   BORROWER COVENANTS that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property and that the Property is unencumbered, except for encumbrances of record. Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record.

   THIS SECURITY INSTRUMENT combines uniform covenants for national use and non-uniform covenants with limited variations by jurisdiction to constitute a uniform security instrument covering real property.

   UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

   1. **Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges.** Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S.

0054421797 - 9701

Initials: _____

VMP®-6(IL) (0005)                  Page 3 of 15    01/22/2004 8:43:19 AM  Form 3014  1/01

currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 15. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. **Application of Payments or Proceeds.** Except as otherwise described in this Section 2, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. **Funds for Escrow Items.** Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any, or any sums payable by Borrower to Lender in lieu of the payment of Mortgage Insurance premiums in accordance with the provisions of Section 10. These items are called "Escrow Items." At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts

0054421797-9701

Initials: _____

-6(IL) (0005)    Page 4 of 15    01/22/2004 8:43:19    Form 3014  1/01

due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 9. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 9 and pay such amount and Borrower shall then be obligated under Section 9 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 15 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (1) sufficient to permit Lender to apply the Funds at the time specified under RESPA and (2) not to exceed the maximum amount a lender can require under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than twelve monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than twelve monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Charges; Liens.** Borrower shall pay all taxes, assessments, charges, fines, and impositions attributable to the Property which can attain priority over this Security Instrument, leasehold payments or ground rents on the Property, if any, and Community Association Dues, Fees, and Assessments, if any. To the extent that these items are Escrow Items, Borrower shall pay them in the manner provided in Section 3.

Borrower shall promptly discharge any lien which has priority over this Security Instrument unless Borrower: (a) agrees in writing to the payment of the obligation secured by the lien in a manner acceptable to Lender, but only so long as Borrower is performing such agreement; (b) contests the lien in good faith by, or defends against enforcement of the lien in, legal proceedings which in Lender's opinion operate to prevent the enforcement of the lien while those proceedings are pending, but only until such proceedings are concluded; or (c) secures from the holder of the lien an agreement satisfactory to Lender subordinating the lien to this Security Instrument. If Lender determines that any part of the Property is subject to a lien which can attain priority over this Security Instrument, Lender may give Borrower a notice identifying the

the excess, if any, paid to Borrower. Such insurance proceeds shall be applied in the order provided for in Section 2.

If Borrower abandons the Property, Lender may file, negotiate and settle any available insurance claim and related matters. If Borrower does not respond within 30 days to a notice from Lender that the insurance carrier has offered to settle a claim, then Lender may negotiate and settle the claim. The 30-day period will begin when the notice is given. In either event, or if Lender acquires the Property under Section 22 or otherwise, Borrower hereby assigns to Lender (a) Borrower's rights to any insurance proceeds in an amount not to exceed the amounts unpaid under the Note or this Security Instrument, and (b) any other of Borrower's rights (other than the right to any refund of unearned premiums paid by Borrower) under all insurance policies covering the Property, insofar as such rights are applicable to the coverage of the Property. Lender may use the insurance proceeds either to repair or restore the Property or to pay amounts unpaid under the Note or this Security Instrument, whether or not then due.

6. **Occupancy.** Borrower shall occupy, establish, and use the Property as Borrower's principal residence within 60 days after the execution of this Security Instrument and shall continue to occupy the Property as Borrower's principal residence for at least one year after the date of occupancy, unless Lender otherwise agrees in writing, which consent shall not be unreasonably withheld, or unless extenuating circumstances exist which are beyond Borrower's control.

7. **Preservation, Maintenance and Protection of the Property; Inspections.** Borrower shall not destroy, damage or impair the Property, allow the Property to deteriorate or commit waste on the Property. Whether or not Borrower is residing in the Property, Borrower shall maintain the Property in order to prevent the Property from deteriorating or decreasing in value due to its condition. Unless it is determined pursuant to Section 5 that repair or restoration is not economically feasible, Borrower shall promptly repair the Property if damaged to avoid further deterioration or damage. If insurance or condemnation proceeds are paid in connection with damage to, or the taking of, the Property, Borrower shall be responsible for repairing or restoring the Property only if Lender has released proceeds for such purposes. Lender may disburse proceeds for the repairs and restoration in a single payment or in a series of progress payments as the work is completed. If the insurance or condemnation proceeds are not sufficient to repair or restore the Property, Borrower is not relieved of Borrower's obligation for the completion of such repair or restoration.

Lender or its agent may make reasonable entries upon and inspections of the Property. If it has reasonable cause, Lender may inspect the interior of the improvements on the Property. Lender shall give Borrower notice at the time of or prior to such an interior inspection specifying such reasonable cause.

8. **Borrower's Loan Application.** Borrower shall be in default if, during the Loan application process, Borrower or any persons or entities acting at the direction of Borrower or with Borrower's knowledge or consent gave materially false, misleading, or inaccurate information or statements to Lender (or failed to provide Lender with material information) in connection with the Loan. Material representations include, but are not limited to, representations concerning Borrower's occupancy of the Property as Borrower's principal residence.

9. **Protection of Lender's Interest in the Property and Rights Under this Security Instrument.** If (a) Borrower fails to perform the covenants and agreements contained in this Security Instrument, (b) there is a legal proceeding that might significantly affect Lender's interest in the Property and/or rights under this Security Instrument (such as a proceeding in bankruptcy, probate, for condemnation or forfeiture, for enforcement of a lien which may attain priority over this Security Instrument or to enforce laws or regulations), or (c) Borrower has abandoned the Property, then Lender may do and pay for whatever is reasonable or appropriate to protect Lender's interest in the Property and rights under this Security Instrument, including protecting and/or assessing the value of the Property, and securing and/or repairing the Property. Lender's actions can include, but are not limited to: (a) paying any sums secured by a lien which has priority over this Security Instrument; (b) appearing in court; and (c) paying reasonable

attorneys' fees to protect its interest in the Property and/or rights under this Security Instrument, including its secured position in a bankruptcy proceeding. Securing the Property includes, but is not limited to, entering the Property to make repairs, change locks, replace or board up doors and windows, drain water from pipes, eliminate building or other code violations or dangerous conditions, and have utilities turned on or off. Although Lender may take action under this Section 9, Lender does not have to do so and is not under any duty or obligation to do so. It is agreed that Lender incurs no liability for not taking any or all actions authorized under this Section 9.

Any amounts disbursed by Lender under this Section 9 shall become additional debt of Borrower secured by this Security Instrument. These amounts shall bear interest at the Note rate from the date of disbursement and shall be payable, with such interest, upon notice from Lender to Borrower requesting payment.

If this Security Instrument is on a leasehold, Borrower shall comply with all the provisions of the lease. If Borrower acquires fee title to the Property, the leasehold and the fee title shall not merge unless Lender agrees to the merger in writing.

10. **Mortgage Insurance.** If Lender required Mortgage Insurance as a condition of making the Loan, Borrower shall pay the premiums required to maintain the Mortgage Insurance in effect. If, for any reason, the Mortgage Insurance coverage required by Lender ceases to be available from the mortgage insurer that previously provided such insurance and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to obtain coverage substantially equivalent to the Mortgage Insurance previously in effect, at a cost substantially equivalent to the cost to Borrower of the Mortgage Insurance previously in effect, from an alternate mortgage insurer selected by Lender. If substantially equivalent Mortgage Insurance coverage is not available, Borrower shall continue to pay to Lender the amount of the separately designated payments that were due when the insurance coverage ceased to be in effect. Lender will accept, use and retain these payments as a non-refundable loss reserve in lieu of Mortgage Insurance. Such loss reserve shall be non-refundable, notwithstanding the fact that the Loan is ultimately paid in full, and Lender shall not be required to pay Borrower any interest or earnings on such loss reserve. Lender can no longer require loss reserve payments if Mortgage Insurance coverage (in the amount and for the period that Lender requires) provided by an insurer selected by Lender again becomes available, is obtained, and Lender requires separately designated payments toward the premiums for Mortgage Insurance. If Lender required Mortgage Insurance as a condition of making the Loan and Borrower was required to make separately designated payments toward the premiums for Mortgage Insurance, Borrower shall pay the premiums required to maintain Mortgage Insurance in effect, or to provide a non-refundable loss reserve, until Lender's requirement for Mortgage Insurance ends in accordance with any written agreement between Borrower and Lender providing for such termination or until termination is required by Applicable Law. Nothing in this Section 10 affects Borrower's obligation to pay interest at the rate provided in the Note.

Mortgage Insurance reimburses Lender (or any entity that purchases the Note) for certain losses it may incur if Borrower does not repay the Loan as agreed. Borrower is not a party to the Mortgage Insurance.

Mortgage insurers evaluate their total risk on all such insurance in force from time to time, and may enter into agreements with other parties that share or modify their risk, or reduce losses. These agreements are on terms and conditions that are satisfactory to the mortgage insurer and the other party (or parties) to these agreements. These agreements may require the mortgage insurer to make payments using any source of funds that the mortgage insurer may have available (which may include funds obtained from Mortgage Insurance premiums).

As a result of these agreements, Lender, any purchaser of the Note, another insurer, any reinsurer, any other entity, or any affiliate of any of the foregoing, may receive (directly or indirectly) amounts that derive from (or might be characterized as) a portion of Borrower's payments for Mortgage Insurance, in exchange for sharing or modifying the mortgage insurer's risk, or reducing losses. If such agreement provides that an affiliate of Lender takes a share of the insurer's risk in exchange for a share of the premiums paid to the insurer, the arrangement is often termed "captive reinsurance." Further:

(a) **Any such agreements will not affect the amounts that Borrower has agreed to pay for Mortgage Insurance, or any other terms of the Loan. Such agreements will not increase the amount Borrower will owe for Mortgage Insurance, and they will not entitle Borrower to any refund.**

(b) Any such agreements will not affect the rights Borrower has - if any - with respect to the Mortgage Insurance under the Homeowners Protection Act of 1998 or any other law. These rights may include the right to receive certain disclosures, to request and obtain cancellation of the Mortgage Insurance, to have the Mortgage Insurance terminated automatically, and/or to receive a refund of any Mortgage Insurance premiums that were unearned at the time of such cancellation or termination.

11. Assignment of Miscellaneous Proceeds; Forfeiture. All Miscellaneous Proceeds are hereby assigned to and shall be paid to Lender.

If the Property is damaged, such Miscellaneous Proceeds shall be applied to restoration or repair of the Property, if the restoration or repair is economically feasible and Lender's security is not lessened. During such repair and restoration period, Lender shall have the right to hold such Miscellaneous Proceeds until Lender has had an opportunity to inspect such Property to ensure the work has been completed to Lender's satisfaction, provided that such inspection shall be undertaken promptly. Lender may pay for the repairs and restoration in a single disbursement or in a series of progress payments as the work is completed. Unless an agreement is made in writing or Applicable Law requires interest to be paid on such Miscellaneous Proceeds, Lender shall not be required to pay Borrower any interest or earnings on such Miscellaneous Proceeds. If the restoration or repair is not economically feasible or Lender's security would be lessened, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower. Such Miscellaneous Proceeds shall be applied in the order provided for in Section 2.

In the event of a total taking, destruction, or loss in value of the Property, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with the excess, if any, paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is equal to or greater than the amount of the sums secured by this Security Instrument immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the sums secured by this Security Instrument shall be reduced by the amount of the Miscellaneous Proceeds multiplied by the following fraction: (a) the total amount of the sums secured immediately before the partial taking, destruction, or loss in value divided by (b) the fair market value of the Property immediately before the partial taking, destruction, or loss in value. Any balance shall be paid to Borrower.

In the event of a partial taking, destruction, or loss in value of the Property in which the fair market value of the Property immediately before the partial taking, destruction, or loss in value is less than the amount of the sums secured immediately before the partial taking, destruction, or loss in value, unless Borrower and Lender otherwise agree in writing, the Miscellaneous Proceeds shall be applied to the sums secured by this Security Instrument whether or not the sums are then due.

If the Property is abandoned by Borrower, or if, after notice by Lender to Borrower that the Opposing Party (as defined in the next sentence) offers to make an award to settle a claim for damages, Borrower fails to respond to Lender within 30 days after the date the notice is given, Lender is authorized to collect and apply the Miscellaneous Proceeds either to restoration or repair of the Property or to the sums secured by this Security Instrument, whether or not then due. "Opposing Party" means the third party that owes Borrower Miscellaneous Proceeds or the party against whom Borrower has a right of action in regard to Miscellaneous Proceeds.

Borrower shall be in default if any action or proceeding, whether civil or criminal, is begun that, in Lender's judgment, could result in forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. Borrower can cure such a default and, if acceleration has occurred, reinstate as provided in Section 19, by causing the action or proceeding to be dismissed with a ruling that, in Lender's judgment, precludes forfeiture of the Property or other material impairment of Lender's interest in the Property or rights under this Security Instrument. The proceeds of any award or claim for damages that are attributable to the impairment of Lender's interest in the Property are hereby assigned and shall be paid to Lender.

All Miscellaneous Proceeds that are not applied to restoration or repair of the Property shall be applied in the order provided for in Section 2.

12. Borrower Not Released; Forbearance By Lender Not a Waiver. Extension of the time for payment or modification of amortization of the sums secured by this Security Instrument granted by Lender

0054421797 - 9701

Initials: _____

Page 9 of 15          01/22/2004  8:43:19          Form 3014   1/01

-6(IL) (0005)

to Borrower or any Successor in Interest of Borrower shall not operate to release the liability of Borrower or any Successors in Interest of Borrower. Lender shall not be required to commence proceedings against any Successor in Interest of Borrower or to refuse to extend time for payment or otherwise modify amortization of the sums secured by this Security Instrument by reason of any demand made by the original Borrower or any Successors in Interest of Borrower. Any forbearance by Lender in exercising any right or remedy including, without limitation, Lender's acceptance of payments from third persons, entities or Successors in Interest of Borrower or in amounts less than the amount then due, shall not be a waiver of or preclude the exercise of any right or remedy.

**13. Joint and Several Liability; Co-signers; Successors and Assigns Bound.** Borrower covenants and agrees that Borrower's obligations and liability shall be joint and several. However, any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signer"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signer's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signer's consent.

Subject to the provisions of Section 18, any Successor in Interest of Borrower who assumes Borrower's obligations under this Security Instrument in writing, and is approved by Lender, shall obtain all of Borrower's rights and benefits under this Security Instrument. Borrower shall not be released from Borrower's obligations and liability under this Security Instrument unless Lender agrees to such release in writing. The covenants and agreements of this Security Instrument shall bind (except as provided in Section 20) and benefit the successors and assigns of Lender.

**14. Loan Charges.** Lender may charge Borrower fees for services performed in connection with Borrower's default, for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument, including, but not limited to, attorneys' fees, property inspection and valuation fees. In regard to any other fees, the absence of express authority in this Security Instrument to charge a specific fee to Borrower shall not be construed as a prohibition on the charging of such fee. Lender may not charge fees that are expressly prohibited by this Security Instrument or by Applicable Law.

If the Loan is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the Loan exceed the permitted limits, then: (a) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limit; and (b) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the principal owed under the Note or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge (whether or not a prepayment charge is provided for under the Note). Borrower's acceptance of any such refund made by direct payment to Borrower will constitute a waiver of any right of action Borrower might have arising out of such overcharge.

**15. Notices.** All notices given by Borrower or Lender in connection with this Security Instrument must be in writing. Any notice to Borrower in connection with this Security Instrument shall be deemed to have been given to Borrower when mailed by first class mail or when actually delivered to Borrower's notice address if sent by other means. Notice to any one Borrower shall constitute notice to all Borrowers unless Applicable Law expressly requires otherwise. The notice address shall be the Property Address unless Borrower has designated a substitute notice address by notice to Lender. Borrower shall promptly notify Lender of Borrower's change of address. If Lender specifies a procedure for reporting Borrower's change of address, then Borrower shall only report a change of address through that specified procedure. There may be only one designated notice address under this Security Instrument at any one time. Any notice to Lender shall be given by delivering it or by mailing it by first class mail to Lender's address stated herein unless Lender has designated another address by notice to Borrower. Any notice in connection with this Security Instrument shall not be deemed to have been given to Lender until actually received by Lender. If any notice required by this Security Instrument is also required under Applicable Law, the Applicable Law requirement will satisfy the corresponding requirement under this Security Instrument.

0054421797 - 9701

Initials: XKL

**16. Governing Law; Severability; Rules of Construction.** This Security Instrument shall be governed by federal law and the law of the jurisdiction in which the Property is located. All rights and obligations contained in this Security Instrument are subject to any requirements and limitations of Applicable Law. Applicable Law might explicitly or implicitly allow the parties to agree by contract or it might be silent, but such silence shall not be construed as a prohibition against agreement by contract. In the event that any provision or clause of this Security Instrument or the Note conflicts with Applicable Law, such conflict shall not affect other provisions of this Security Instrument or the Note which can be given effect without the conflicting provision.

As used in this Security Instrument: (a) words of the masculine gender shall mean and include corresponding neuter words or words of the feminine gender; (b) words in the singular shall mean and include the plural and vice versa; and (c) the word "may" gives sole discretion without any obligation to take any action.

**17. Borrower's Copy.** Borrower shall be given one copy of the Note and of this Security Instrument.

**18. Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by Applicable Law.

If Lender exercises this option, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

**19. Borrower's Right to Reinstate After Acceleration.** If Borrower meets certain conditions, Borrower shall have the right to have enforcement of this Security Instrument discontinued at any time prior to the earliest of: (a) five days before sale of the Property pursuant to Section 22 of this Security Instrument; (b) such other period as Applicable Law might specify for the termination of Borrower's right to reinstate; or (c) entry of a judgment enforcing this Security Instrument. Those conditions are that Borrower: (a) pays Lender all sums which then would be due under this Security Instrument and the Note as if no acceleration had occurred; (b) cures any default of any other covenants or agreements; (c) pays all expenses incurred in enforcing this Security Instrument, including, but not limited to, reasonable attorneys' fees, property inspection and valuation fees, and other fees incurred for the purpose of protecting Lender's interest in the Property and rights under this Security Instrument; and (d) takes such action as Lender may reasonably require to assure that Lender's interest in the Property and rights under this Security Instrument, and Borrower's obligation to pay the sums secured by this Security Instrument, shall continue unchanged unless as otherwise provided under Applicable Law. Lender may require that Borrower pay such reinstatement sums and expenses in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality or entity; or (d) Electronic Funds Transfer. Upon reinstatement by Borrower, this Security Instrument and obligations secured hereby shall remain fully effective as if no acceleration had occurred. However, this right to reinstate shall not apply in the case of acceleration under Section 18.

**20. Sale of Note; Change of Loan Servicer; Notice of Grievance.** The Note or a partial interest in the Note (together with this Security Instrument) can be sold one or more times without prior notice to Borrower. A sale might result in a change in the entity (known as the "Loan Servicer") that collects Periodic Payments due under the Note and this Security Instrument and performs other mortgage loan servicing obligations under the Note, this Security Instrument, and Applicable Law. There also might be one or more changes of the Loan Servicer unrelated to a sale of the Note. If there is a change of the Loan Servicer, Borrower will be given written notice of the change which will state the name and address of the new Loan Servicer, the address to which payments should be made and any other information RESPA

0054421797 -9701
Initials: XKC

*VMP*®-6(IL) (0005)    Page 11 of 15    01/22/2004 8:43:19    Form 3014  1/01

requires in connection with a notice of transfer of servicing. If the Note is sold and thereafter the Loan is serviced by a Loan Servicer other than the purchaser of the Note, the mortgage loan servicing obligations to Borrower will remain with the Loan Servicer or be transferred to a successor Loan Servicer and are not assumed by the Note purchaser unless otherwise provided by the Note purchaser.

Neither Borrower nor Lender may commence, join, or be joined to any judicial action (as either an individual litigant or the member of a class) that arises from the other party's actions pursuant to this Security Instrument or that alleges that the other party has breached any provision of, or any duty owed by reason of, this Security Instrument, until such Borrower or Lender has notified the other party (with such notice given in compliance with the requirements of Section 15) of such alleged breach and afforded the other party hereto a reasonable period after the giving of such notice to take corrective action. If Applicable Law provides a time period which must elapse before certain action can be taken, that time period will be deemed to be reasonable for purposes of this paragraph. The notice of acceleration and opportunity to cure given to Borrower pursuant to Section 22 and the notice of acceleration given to Borrower pursuant to Section 18 shall be deemed to satisfy the notice and opportunity to take corrective action provisions of this Section 20.

21. **Hazardous Substances.** As used in this Section 21: (a) "Hazardous Substances" are those substances defined as toxic or hazardous substances, pollutants, or wastes by Environmental Law and the following substances: gasoline, kerosene, other flammable or toxic petroleum products, toxic pesticides and herbicides, volatile solvents, materials containing asbestos or formaldehyde, and radioactive materials; (b) "Environmental Law" means federal laws and laws of the jurisdiction where the Property is located that relate to health, safety or environmental protection; (c) "Environmental Cleanup" includes any response action, remedial action, or removal action, as defined in Environmental Law; and (d) an "Environmental Condition" means a condition that can cause, contribute to, or otherwise trigger an Environmental Cleanup.

Borrower shall not cause or permit the presence, use, disposal, storage, or release of any Hazardous Substances, or threaten to release any Hazardous Substances, on or in the Property. Borrower shall not do, nor allow anyone else to do, anything affecting the Property (a) that is in violation of any Environmental Law, (b) which creates an Environmental Condition, or (c) which, due to the presence, use, or release of a Hazardous Substance, creates a condition that adversely affects the value of the Property. The preceding two sentences shall not apply to the presence, use, or storage on the Property of small quantities of Hazardous Substances that are generally recognized to be appropriate to normal residential uses and to maintenance of the Property (including, but not limited to, hazardous substances in consumer products).

Borrower shall promptly give Lender written notice of (a) any investigation, claim, demand, lawsuit or other action by any governmental or regulatory agency or private party involving the Property and any Hazardous Substance or Environmental Law of which Borrower has actual knowledge, (b) any Environmental Condition, including but not limited to, any spilling, leaking, discharge, release or threat of release of any Hazardous Substance, and (c) any condition caused by the presence, use or release of a Hazardous Substance which adversely affects the value of the Property. If Borrower learns, or is notified by any governmental or regulatory authority, or any private party, that any removal or other remediation of any Hazardous Substance affecting the Property is necessary, Borrower shall promptly take all necessary remedial actions in accordance with Environmental Law. Nothing herein shall create any obligation on Lender for an Environmental Cleanup.

0054421797 -9701

Initials: _KL_

-6(IL) (0005)    Page 12 of 15    01/22/2004 8:43:19    Form 3014  1/01

**NON-UNIFORM COVENANTS.** Borrower and Lender further covenant and agree as follows:

**22. Acceleration; Remedies.** Lender shall give notice to Borrower prior to acceleration following Borrower's breach of any covenant or agreement in this Security Instrument (but not prior to acceleration under Section 18 unless Applicable Law provides otherwise). The notice shall specify: (a) the default; (b) the action required to cure the default; (c) a date, not less than 30 days from the date the notice is given to Borrower, by which the default must be cured; and (d) that failure to cure the default on or before the date specified in the notice may result in acceleration of the sums secured by this Security Instrument, foreclosure by judicial proceeding and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the non-existence of a default or any other defense of Borrower to acceleration and foreclosure. If the default is not cured on or before the date specified in the notice, Lender at its option may require immediate payment in full of all sums secured by this Security Instrument without further demand and may foreclose this Security Instrument by judicial proceeding. Lender shall be entitled to collect all expenses incurred in pursuing the remedies provided in this Section 22, including, but not limited to, reasonable attorneys' fees and costs of title evidence.

**23. Release.** Upon payment of all sums secured by this Security Instrument, Lender shall release this Security Instrument. Borrower shall pay any recordation costs. Lender may charge Borrower a fee for releasing this Security Instrument, but only if the fee is paid to a third party for services rendered and the charging of the fee is permitted under Applicable Law.

**24. Waiver of Homestead.** In accordance with Illinois law, the Borrower hereby releases and waives all rights under and by virtue of the Illinois homestead exemption laws.

0054421797 - 9701

Initials

 -6(IL) (0005)

Page 13 of 15    01/22/2004 8:43:19    Form 3014   1/01

**BY SIGNING BELOW,** Borrower accepts and agrees to the terms and covenants contained in this Security Instrument and in any Rider executed by Borrower and recorded with it.

Witnesses:

_____

X _____ (Seal)
KENNETH LILLY                                    -Borrower

_____

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                                 -Borrower

_____ (Seal)
                                   -Borrower

_____ (Seal)
                                                 -Borrower

0054421797 - 9701

-6(IL) (0005)                    Page 14 of 15  01/22/2004 8:43:19 AM  Form 3014  1/01

**STATE OF ILLINOIS,**      County ss: Cook

I, the undersigned _____ a Notary
Public in and for said county and in said state, hereby certify that

Kenneth Lilly an unmarried man _____

_____

_____

personally known to me to be the same person(s) whose name(s) subscribed to the foregoing
instrument, appeared before me this day in person, and acknowledged that he/she/they signed
and delivered the said instrument as his/her/their free and voluntary act, for the uses and
purposes therein set forth.

Given under my hand and official seal of this 1/23/04

My Commission Expires:



Notary Public

```
"OFFICIAL  SEAL"
COLEEN WIRTEL
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 5/10/2004
```



400-15IL (4/02)          Page 15 of 15          0054421797 - 9701

01/22/2004 8:43:19 AM

# ADJUSTABLE RATE RIDER
### (LIBOR Six-Month-Index (As Published in the Wall Street Journal)- Rate Caps)

THIS ADJUSTABLE RATE RIDER is made this 22nd day of January , 2004    and is incorporated into and shall be deemed to amend and supplement the Mortgage, Deed of Trust or Security Deed (the "Security Instrument") of the same date given by the undersigned (the "Borrower") to secure Borrower's Adjustable Rate Note (the "Note") to Argent Mortgage Company, LLC (the "Lender") of the same date and covering the property described in the Security Instrument and located at:

17807 S. TANGLEWOOD, HAZEL CREST, IL 60429
[Property Address]


**THE NOTE CONTAINS PROVISIONS ALLOWING FOR CHANGES IN THE INTEREST RATE AND THE MONTHLY PAYMENT. THE NOTE LIMITS THE AMOUNT THE BORROWER'S INTEREST RATE CAN CHANGE AT ANY ONE TIME AND THE MAXIMUM RATE THE BORROWER MUST PAY.**

**ADDITIONAL COVENANTS.** In addition to the covenants and agreements made in the Security Instrument, Borrower and Lender further covenant and agree as follows:

**A.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
The Note provides for an initial interest rate of  7.450 %. The Note provides for changes in the interest rate and the monthly payments, as follows:

**4.   INTEREST RATE AND MONTHLY PAYMENT CHANGES**
**(A) Change Dates**
The interest rate I will pay may change on the first day of  February, 2007 , and on that day every sixth month thereafter. Each date on which my interest rate could change is called a "Change Date."

**(B) The Index**
Beginning with the first Change Date, my interest rate will be based on an Index.  The "Index" is the average of interbank offered rates for six-month U.S. dollar-denominated deposits in the London market ("LIBOR"), as published in the Wall Street Journal.  The most recent Index figure available as of the date 45 days before each Change Date is called the "Current Index."

If the Index is no longer available, the Note Holder will choose a new index which is based upon comparable information.  The Note Holder will give me notice of this choice.

Initials X _KL_

Loan Number: 0054421797 - 9701

**(C) Calculation of Changes**
Before each Change Date, the Note Holder will calculate my new interest rate by adding **four and one-half** percentage points ( **4.500** %) to the Current Index. The Note Holder will then round the result of this addition to the nearest one-eighth of one percentage point (0.125%). Subject to the limits stated in Section 4(D) below, this rounded amount will be my new interest rate until the next Change Date.

The Note Holder will then determine the amount of the monthly payment that would be sufficient to repay the unpaid principal that I am expected to owe at the Change Date in full on the maturity date at my new interest rate in substantially equal payments. The result of this calculation will be the new amount of my monthly payment.

**(D) Limits on Interest Rate Changes**
The interest rate I am required to pay at the first Change Date will not be greater than **9.450% or less than 7.450%.** Thereafter, my interest rate will never be increased or decreased on any single Change Date by more than **One( 1.000 %)** from the rate of interest I have been paying for the preceding   six months. My interest rate will never be greater than 13.450)% or less than 7.450)%.

**(E) Effective Date of Changes**
My new interest rate will become effective on each Change Date. I will pay the amount of my new monthly payment beginning on the first monthly payment date after the Change Date until the amount of my monthly payment changes again.

**(F) Notice of Changes**
The Note Holder will deliver or mail to me a notice of any changes in my interest rate and the amount of my monthly payment before the effective date of any change. The notice will include information required by law to be given me and also the title and telephone number of a person who will answer any question I may have regarding the notice.

## B. TRANSFER OF THE PROPERTY OR A BENEFICIAL INTEREST IN BORROWER

Section 18 of the Security Instrument is amended to read as follows:

**Transfer of the Property or a Beneficial Interest in Borrower.** As used in this Section 18, "Interest in the Property" means any legal or beneficial interest in the Property, including, but not limited to, those beneficial interests transferred in a bond for deed, contract for deed, installment sales contract or escrow agreement, the intent of which is the transfer of title by Borrower at a future date to a purchaser.

Initials XKL

Loan Number: 0054421797 - 9701

If all or any part of the Property or any Interest in the Property is sold or transferred (or if Borrower is not a natural person and a beneficial interest in Borrower is sold or transferred) without Lender's prior written consent, Lender may require immediate payment in full of all sums secured by this Security Instrument. However, this option shall not be exercised by Lender if such exercise is prohibited by federal law. Lender also shall not exercise this option if: (a) Borrower causes to be submitted to Lender information required by Lender to evaluate the intended transferee as if a new loan were being made to the transferee; and (b) Lender reasonably determines that Lender's security will not be impaired by the loan assumption and that the risk of a breach of any covenant or agreement in this Security Instrument is acceptable to Lender.

To the extent permitted by Applicable Law, Lender may charge a reasonable fee as a condition to Lender's consent to the loan assumption. Lender may also require the transferee to sign an assumption agreement that is acceptable to Lender and that obligates the transferee to keep all the promises and agreements made in the Note and in this Security Instrument. Borrower will continue to be obligated under the Note and this Security Instrument unless Lender releases Borrower in writing. If Lender exercises the option to require immediate payment in full, Lender shall give Borrower notice of acceleration. The notice shall provide a period of not less than 30 days from the date the notice is given in accordance with Section 15 within which Borrower must pay all sums secured by this Security Instrument. If Borrower fails to pay these sums prior to the expiration of this period, Lender may invoke any remedies permitted by this Security Instrument without further notice or demand on Borrower.

BY SIGNING BELOW, Borrower accepts and agrees to the terms and covenants contained in this Adjustable Rate Rider.

_____ (Seal)     _____ (Seal)
Borrower KENNETH LILLY                       Borrower


_____ (Seal)     _____ (Seal)
Borrower                                     Borrower


Loan Number: 0054421797 - 9701


610-3 (Rev 1/01)                    Page 3 of 3

                                                        01/22/2004 8:43:19 AM

B

GEORGE E. COLE®    No. 822 REC
LEGAL FORMS    December 1999

### QUIT CLAIM DEED
### Statutory (Illinois)
### (Individual to Individual)

CAUTION: Consult a lawyer before using or
acting under this form.  *Neither the
publisher nor the seller of this form makes
any warranty with respect thereto, including
any warranty of merchantability or fitness
for a particular purpose.*

THE GRANTOR(S)  KENNETH LILLY                    **Above Space for Recorder's use only**

of the City  HAZEL CREST of  - - - - - - - - - -  County of  COOK  State of ILLINOIS  for the
consideration of  TEN AND 00/100  _____ DOLLARS, and other good and valuable
considerations  NA  _____ in hand paid, CONVEY(S)  X  and QUIT CLAIM(S)
_____ TO  JEFFREY DAWKINS, 17807 S. TANGLEWOOD, HAZEL CREST, IL. 60429
**(Name and Address of Grantees)**

all interest in the following described Real Estate, the real estate situated in  COOK  County, Illinois,
commonly known as  17807 S. TANGLEWOOD, HAZEL CREST, (st. address) legally described as:

ATTACHED

hereby releasing and waiving all rights under and by virtue of the Homestead Exemption Laws of the State of Illinios.
Permanent Real Estate Index Number(s):  28-36-112-012-0000
Address(es) of Real Estate:  17807 S. Tanglewood, Hazel Crest, IL. 60429

DATED this:  23rd  day of  January, 20 04

Please    *Kenneth Lilly*  (SEAL)  _____ (SEAL)
print or    Kenneth Lilly
type name(s)    _____ (SEAL)  _____ (SEAL)
below
signature(s)    _____ (SEAL)  _____ (SEAL)

State of Illinois, County of  Illinois  ss. I, the undersigned, a Notary Public in and for said County,
in the State aforesaid, DO HEREBY CERTIFY that
KENNETH LILLY

IMPRESS    personally known to me to be the same person  _  whose name  is  subscribed to the
SEAL    foregoing instrument, appeared before me this day in person, and acknowledged that ___ h e
"OFFICIAL SEAL"    signed, sealed and delivered the said instrument as  a  free and voluntary act, for the
CALVAN L. MURPHY    uses and purposes therein set forth, including the release and waiver of the right of homestead.
NOTARY PUBLIC, STATE OF ILLINOIS
MY COMMISSION EXPIRES 03/03/05

## Quit Claim Deed
### INDIVIDUAL TO INDIVIDUAL

KENNETH LILLY

TO

JEFFREY DAWKINS

GEORGE E. COLE®
LEGAL FORMS

---

Given under my hand and official seal, this **23rd** day of **January** 20 **04**

Commission expires **March 3** 20 **05** _____
NOTARY PUBLIC

This instrument was prepared by  ATTORNEY DAREIN RICHARDSON
(Name and Address)

| MAIL TO: | Same as tax bill |
| | (Name) |
| | (Address) |
| | (City, State and Zip) |
| OR | RECORDER'S OFFICE BOX NO. |

SEND SUBSEQUENT TAX BILLS TO:

JEFFREW DAWKINS
(Name)

17807 S. Tanglewood
(Address)

Hazel Crest, Illinois 60429
(City, State and Zip)

I8-874-4553

 AMC
MORTGAGE SERVICES

*C*

## MORTGAGE LOAN STATEMENT

RETAIN THIS PORTION FOR YOUR RECORDS

| | |
|---|---|
| STATEMENT DATE | 10/18/05 |
| LOAN NUMBER | **0054421797** |
| PROPERTY ADDRESS | 17807 S TANGLEWOOD HAZEL CREST IL 60429 |

#BWNKZZS
KENNETH LILLY
17807 S TANGLEWOOD
HAZEL CREST IL 60429-2017

8861

**Thinking About Refinancing?**
For information, please call toll-free
**(800) 325-1493**

*Jennifer Sea*
866-299-9963 *Ex 82459*

### TOTAL AMOUNT DUE

| | |
|---|---|
| Suspense Balance: | $.00 |
| Total Amount Past Due: | $.00 |
| Payment Due on 11/01/05 | **$2,142.37** |
| | |
| Expenses Paid by AMC: | $.00 |
| Unpaid Late Charges: | $340.50 |
| Other Fees & Charges: | $.00 |
| Total Expenses/Fees Due: | $340.50 |
| | |
| Total Amount Due: | **$2,482.87** |

To avoid late charges of $50.10 we must receive your payment by 11/16/05 during business hours.

### MONTHLY PAYMENT FACTORS
(For Payment Due on 11/01/05)

| | |
|---|---|
| Interest Rate: | 7.45000% ✓ |
| Monthly Payment: | $1,001.95 |
| Escrow: | $1,140.42 |
| Insurance Products/Misc: | $.00 |
| Monthly Total: | $2,142.37 |
| | |
| Next Monthly Payment Change Date: | 03/01/07 |

*Visit* www.myamcloan.com.

### BALANCES

| | |
|---|---|
| Principal Balance: | $141,708.81 |
| Escrow Balance: | $4,375.79- |
| | |
| **Amounts Paid Year-To-Date** | |
| Principal: | $1,295.17 |
| Interest: | $9,726.28 |
| Late Charges: | $57.35 |
| Hazard Insurance: | $.00 |
| Taxes/Liens: | $8,837.47 |

### ACTIVITY SINCE YOUR LAST STATEMENT

| DATE | DESCRIPTION | AMOUNT | PRINCIPAL | INTEREST | ESCROW | INSURANCE PRODUCTS/MISC | LATE CHARGES/ CORP ADV/FEES | SUSPENSE |
|---|---|---|---|---|---|---|---|---|
| 10-07 | COUNTY TAXES | $1,637.44 | | | $1,637.44- | | | |
| 10-17 | PMT 10/01/05 | $2,092.37 | $121.42 | $880.53 | $1,090.42 | | | |

### IMPORTANT MESSAGES



Expenses/fees paid will be applied in the following order: expenses paid by AMC, outstanding fees, late charges, and escrow advances, then additional principal. Outstanding expenses/fees will be paid before any funds are applied towards additional principal.

**EXHIBIT D**

# AMC
MORTGAGE SERVICES  **P.O. Box 11570**
**Santa Ana, CA 92711-1570**

ESCROW ACCOUNT DISCLOSURE STATEMENT &
CHANGE OF PAYMENT NOTICE PREPARED FOR:

| | |
|---|---|
| LOAN NO: | 0054421797 |
| ANALYSIS DATE: | 10/24/05 |

**ANTICIPATED ANNUAL DISBURSEMENTS**
COUNTY TAX                    $3,799.10

#BWNKZZS
KENNETH LILLY                                      7363
17807 S TANGLEWOOD
HAZEL CREST IL  60429-2017

| | |
|---|---|
| TOTAL | $3,799.10 |
| 1/12th OF TOTAL | $316.59 |

**NEW MONTHLY PAYMENT**

| | |
|---|---|
| Monthly Payment | $1,001.95 |
| Required Escrow Payment | $316.59 |
| Shortage/Surplus Payment | $401.53 |
| Optional Products/Misc | $.00 |

| | |
|---|---|
| TOTAL MONTHLY PAYMENT: | $1,720.07 ✔ |
| NEW PAYMENT EFFECTIVE DATE: | 12/01/05 |

AMC Mortgage Services analyzes your escrow account periodically in accordance with federal regulations to ensure we collect sufficient funds to pay escrow items when due. Please review and retain this statement. If you have any questions, you may call our Customer Care Department at **1-800-430-5262**, Monday through Friday, 6:00 a.m. - 6:00 p.m. Pacific Time.

## ESCROW ACCOUNT PROJECTION FOR THE COMING YEAR

The escrow account projection below illustrates the lowest balance (*) your escrow account is estimated to reach from December 2005 through November 2006 based on anticipated payments and disbursements.

| MONTH | PAYMENTS TO ESCROW ACCOUNT | MIP/PMI | HAZ. INS. | FLOOD | TAXES | OTHER / LIENS | ESCROW ACCOUNT BALANCE PROJECTED | REQUIRED |
|---|---|---|---|---|---|---|---|---|
| STARTING BALANCE | | | | | | | | |
| DEC/05 | $316.59 | | | | | | $3,235.37- | $1,582.97 |
| JAN/06 | $316.59 | | | | | | $2,918.78- | $1,899.56 |
| FEB/06 | $316.59 | | | | | | $2,602.18- | $2,216.15 |
| MAR/06 | $316.59 | | | | $2,161.66 | | $4,447.26- | $371.08 |
| APR/06 | $316.59 | | | | | | $4,130.67- | $687.67 |
| MAY/06 | $316.59 | | | | | | $3,814.08- | $1,004.26 |
| JUN/06 | $316.59 | | | | | | $3,497.49- | $1,320.85 |
| JUL/06 | $316.59 | | | | | | $3,180.90- | $1,637.44 |
| AUG/06 | $316.59 | | | | $1,637.44 | | $4,501.75- | $316.59 * |
| SEP/06 | $316.59 | | | | | | $4,185.16- | $633.18 |
| OCT/06 | $316.59 | | | | | | $3,868.57- | $949.77 |
| NOV/06 | $316.59 | | | | | | $3,551.98- | $1,266.36 |
| | | | | | | | $3,235.39- | $1,582.95 |

(*) Indicates your projected low point of $4,501.75-. Your lowest monthly balance should not exceed $316.59. The difference between your projected low point and the required lowest monthly balance is $4,818.34. This means you have a shortage of $4,818.34. We have spread collection of your shortage over 12 months.

The terms of your Adjustable Rate Mortgage loan may result in changes to the monthly principal and interest payment, which will change the total monthly payment shown above.

Please keep this statement for comparison with the actual activity in your account at the end of the next escrow accounting computation year.

**For more information about your loan account, you may also visit our website at www.myamcloan.com.**

### SHORTAGE

| | | | |
|---|---|---|---|
| LOAN NUMBER: | 0054421797 | SHORTAGE AMOUNT: | $4,818.34- |
| NAME: | KENNETH LILLY | NEW PAYMENT EFFECTIVE DATE: | 12/01/05 |

Your escrow analysis indicated a shortage of $4,818.34-. For your convenience, we spread this amount over 12 months and included it in your monthly payment. However, if you choose to pay it in full, please send your check, along with this coupon to

**AMC MORTGAGE SERVICES**
**P.O. BOX 11570**
**SANTA ANA, CA 92711-1570**

If your check for $4,818.34 is received before 12/01/05, your total monthly payment will be reduced to $1,318.54.

Also doing business as Delaware AMC Mortgage Services, Inc., in the states of Texas, Rhode Island, and New Hampshire.



AMC
MORTGAGE SERVICES

P.O. Box 11000
Santa Ana, CA 92711-1000

Toll Free (800) 430-5262
www.myamcloan.com

NOTICE OF ASSIGNMENT, SALE OR TRANSFER OF SERVICING RIGHTS

December 13, 2006

8

#BWNKZZS
Kenneth Lilly
17807 S Tanglewood            2421
Hazel Crest,  IL 60429-2017

|.||..||.....|.|.|.||.|......|.||.....|||.....||.|....|..|.|.||

Re:  Loan No.  0054421797
     Due Date:  09-01-06
     Property Address: 17807 S Tanglewood,Hazel Crest IL 60429

You are hereby notified that the servicing of the above mortgage loan, is
being assigned, sold or transferred from AMC Mortgage Services, Inc. to
Litton Loan Servicing LP effective January 03, 2007.

This assignment, sale or transfer will only affect the servicing of your
loan.  All other terms contained in your mortgage documents remain in
effect. Please note that if you have other loans serviced by AMC, these
loans will remain with AMC unless you are informed other wise.

Your present servicer is AMC Mortgage Services, Inc.  If you have
any questions relating to the transfer of servicing, call our Customer
Care Department between 5:00 a.m. to 6:00 p.m., PST, Monday through
Friday at (800) 430-5262.

Your new servicer will be Litton Loan Servicing LP.  Below are its
contacts for Correspondence and Payment questions:
  (CORRESPONDENCE)                    (PAYMENTS)
Litton Loan Servicing LP           Litton Loan Servicing LP
Customer Assistance Response Team  Cash Management Department
4828 Loop Central Drive            P.O. Box 4387
Houston, TX   77081                Houston, TX   77210-4387

The toll-free telephone number of your new servicer is (800) 247-9727.
If you have any questions relating to the transfer of servicing, call
Customer Service between 8:00 a.m. and 7:00 p.m., CST, Monday - Friday.

The date that your present servicer will stop accepting payments from
you is January 02, 2007. The date that your new servicer will
start accepting payments from you is January 03, 2007. Send all
payments due on or after that date to your new servicer.

If you have mortgage life, disability, other type of optional insurance
policies, and/or automatic payment drafting, the policies and automatic

Federal Law requires us to notify you that we are acting as a debt collector. If you are currently in a bankruptcy or have received a discharge in bankruptcy as to this
obligation, this communication is intended for informational purposes only and is not an attempt to collect a debt in violation of the automatic stay or the discharge injunction.

EF08FF/NCP/9-06

Also doing business as Delaware AMC Mortgage Services, Inc., in the states of Texas, Rhode Island, and New Hampshire.

EQUAL HOUSING
LENDER



**Customer Receipt / Recibo del Cliente**

*EXHIBIT F*

```
PLS CHECK CASHERS              Oper ID: MCW   Quick Collect
3175 W 175TH ST                03/05/07
HAZEL CREST IL 604291          325P EST       MTCN: 799-595-8536
```

Sender/Remitente: JEFFERY DAWKINS
Receiver/Destinatario: LITTON MORTGAGE

Code City/Codigo de la ciudad: LITTON TX
Account #/Numero de cuenta: 0019004258/KENNETH LILLY
Reference #/Numero de referencia:
Attn/Atencion:

```
                        Amount/Cantidad:    $ 5000.00
                        Charge(s)/Cargos:
                          Service/Servicio:    12.95
                        Total/Total:        $ 5012.95
```

Apply for the Western Union Prepaid MasterCard at www.westernunion.com/PPMC
and the $9.95 Activation Fee will be waived. No credit check. Enroll today
and a card will be mailed with no Activation Fee. Valid to: April 30, 2007.

Agent Signature /
Firma del Agente

Customer Signature /
Firma del Cliente

*IN ADDITION TO THE TRANSFER FEE, WESTERN UNION ALSO MAKES MONEY WHEN IT CHANGES YOUR DOLLARS INTO FOREIGN CURRENCY. PLEASE SEE REVERSE SIDE FOR MORE INFORMATION REGARDING CURRENCY EXCHANGE. *ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA, WESTERN UNION TAMBIEN GANA DINERO CUANDO CAMBIA SUS DOLARES A MONEDA EXTRANJERA. POR FAVOR LEA AL REVERSO MAS INFORMACION SOBRE EL CAMBIO DE MONEDA. * CERTAIN TERMS GOVERNING THIS TRANSACTION ARE ON THE REVERSE SIDE. BY SIGNING THIS RECEIPT, YOU AGREE TO THOSE TERMS. IF LISTED ABOVE, THE CURRENCY TO BE PAID OUT AND THE EXCHANGE RATE FOR YOUR TRANSACTION WERE DETERMINED AT THE TIME OF SEND. OTHERWISE, THE EXCHANGE RATE WILL BE SET WHEN THE RECEIVER RECEIVES THE FUNDS. * ALGUNOS TERMINOS QUE RIGEN ESTA TRANSACCION SE ESTABLECEN AL REVERSO. AL FIRMAR ESTE RECIBO USTED ACEPTA DICHOS TERMINOS Y CONDICIONES ADEMAS DE LOS CARGOS POR EL SERVICIO DE TRANSFERENCIA. SI APARECEN MAS ARRIBA, LA MONEDA DE PAGO Y LA TASA DE CAMBIO DE SU TRANSACCION SE DETERMINARON EN EL MOMENTO DEL ENVIO. SI NO, LA TASA DE CAMBIO SE ESTABLECERA CUANDO EL DESTINATARIO RECIBA EL DINERO.

**LLS** Litton Loan Servicing

SEND PAYMENTS TO:
P.O. Box 4387
Houston, TX 77210-4387
**www.littonloan.com**

*EXHIBIT G*

88948-238422-048

KENNETH LILLY
17807 TANGLEWOOD CT
HAZEL CREST IL 60429-2017

*Ricky 8242 CL* 4223 43

## BILLING STATEMENT

| | |
|---|---|
| STATEMENT DATE | 03/15/2007 |
| LOAN NUMBER | 0019004258 |
| **CONTRACTUAL DUE DATE** | **11/01/2006** |

PROPERTY ADDRESS:    17807 S Tanglewood
                          Hazel Crest IL 60429

| | |
|---|---|
| PRINCIPAL AND INTEREST | 1,193.84 |
| ESCROW AMOUNT | 718.12 |
| ADDITIONAL AMOUNT REQUIRED | 0.00 |
| MISCELLANEOUS | |
| **TOTAL MONTHLY PAYMENT** | **1,911.96** |
| LATE CHARGES DUE | 890.67 |
| OTHER FEES DUE | 126.00 |

### PAYMENT OPTIONS

**Pay Online** 💻
www.littonloan.com
Go to "Make a Payment"

**Pay By Mail** ✉️
P.O. Box 4387
Houston, TX 77210-4387

**Pay By Phone** ☎️
(800) 999-8501
Press Option 3

**Western Union**
Code City:   Litton
Code State:   Texas

### LOAN INFORMATION

| | |
|---|---|
| *PRINCIPAL BALANCE | 140,191.62 |
| ESCROW BALANCE | -1,508.40 |
| SUSPENSE BALANCE | 1,559.86 |
| CURRENT INTEREST RATE | 9.4500 |

* This is not a payoff balance.

Refer to back of statement for additional information.

This is an attempt to collect your debt and any information obtained will be used for that purpose.

### TRANSACTIONS SINCE LAST STATEMENT

| TRANSACTION DATE | TRANSACTION DESCRIPTION | TRANSACTION AMOUNT | PRINCIPAL | INTEREST | ESCROW | SUSPENSE / FEE OTHER |
|---|---|---|---|---|---|---|
| 03/05/07 | PAYMENT | 1,720.07 | 129.97 | 871.98 | 718.12 | 0.00 |
| 03/05/07 | PAYMENT | 1,720.07 | 130.78 | 871.17 | 718.12 | 0.00 |
| 03/05/07 | FORBEARANCE SUSPENSE | 1,559.86 | 0.00 | 0.00 | 0.00 | 1,559.86 |

*5,000.00*

### IMPORTANT MESSAGES

474-2022-0306F



*H*

4828 Loop Central Drive
Houston, TX 77081
Telephone (800) 999-8501
Fax (713) 966-8844
www.littonloan.com

Mar 15, 2007

Kenneth Lilly

17807 S Tanglewood
Hazel Crest, IL  60429-

Re:    Loan #:        19004258
       Property:      17807 S Tanglewood
                      Hazel Crest, IL 60429

Dear Mortgagor(s):

Our records indicate that you have fallen behind on your mortgage payments.  Foreclosure action on your home
may begin soon or may already be in progress.  Litton Loan Servicing LP ("Litton") would like to review your
financial situation to assist you in possibly avoiding foreclosure.

Litton recognizes that you may be feeling overwhelmed by events beyond your control, and we would
like to explore options that may be available to help preserve your homeownership.  Even if you cannot
afford to maintain homeownership, options are available to help minimize the consequences of your
current financial situation. Litton will  not delay foreclosure action on your home, so please contact
our office immediately.

If you are not obligated on the debt or if the debt has been discharged in a bankruptcy proceeding, the
servicer is not attempting to collect from you personally. You are being provided this notice as a courtesy
because your interest in the real estate may be affected.

Please contact our Loss Mitigation Department immediately at (800) 548-8665 or visit our website at
www.littonloan.com so that we may evaluate your financial situation and discuss foreclosure alternatives.

Sincerely,


Loss Mitigation Department


**Litton Loan Servicing LP is a debt collector.  This letter is an attempt to collect your debt and any information
obtained will be used for that purpose.**

Cook County #21762

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

Deutsche Bank National Trust Company, as Trustee for
Asset-Backed Pass-Through Certificates, Series 2004-W5
PLAINTIFF

Vs.                                            No.

Kenneth Lilly; Jeffrey T. Dawkins; Lorna Barrios
Dawkins; Unknown Owners and Nonrecord Claimants
DEFENDANTS

## COMPLAINT TO FORECLOSE MORTGAGE

NOW COMES the Plaintiff, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS
TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W5, by
and through its attorneys, CODILIS & ASSOCIATES, P.C., complaining of the defendants herein
and, pursuant to 735 ILCS 5/15-1101, states as follows:

1. Plaintiff files this Complaint to Foreclose the mortgage, trust deed or other conveyance in the
nature of a mortgage (hereinafter called "Mortgage") hereinafter described, and joins the persons
named in the caption as "Defendants", as parties hereto.

2. Attached as "EXHIBIT A" is a true copy of the Mortgage.

3. Information concerning said Mortgage:

    (A) Nature of the instrument:  Mortgage.

    (B) Date of the Mortgage:  1/22/2004

    (C) Name of mortgagor(s):

        Kenneth Lilly

    (D) Name of the mortgagee:

        Argent Mortgage Company, LLC

    (E) Date and Place of Recording or Registering:

        3/18/2004
        Office of the Recorder of Deeds of Cook County Illinois

    (F) Identification of Recording: Document No.  0407840255

Page 1 of 4

(G)  Interest subject to the mortgage:  Fee Simple.

(H)  Amount of original indebtedness:

    (1) Original Indebtedness:  $144,000.00

(I)  Both the legal description of the mortgaged real estate and the common address or other information sufficient to identify it with reasonable certainty:

LOT 108 IN HILLCREST SUBDIVISION 1ST ADDITION, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 36, TOWNSHIP 36 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

**COMMONLY KNOWN AS:**    17807 S. Tanglewood Court
                                 Hazel Crest, IL 60429

**TAX PARCEL NUMBER:** 28-36-112-012

(J)  Statement as to defaults:  Mortgagors have not paid the monthly installments of principal, taxes, interest and insurance for 11/01/2006,  through the present; the principal balance due on the Note and the Mortgage is $140,191.62, plus interest, costs, advances and fees. Interest accrues pursuant to the note.

(K)  Name of present owner(s) of said premises:
    Kenneth Lilly

(L)  Names of other persons who are joined as defendants and whose interest in or lien on the mortgaged real estate is sought to be terminated and alleged to be subordinate and inferior to the mortgage of the Plaintiff:

Jeffrey T. Dawkins, by virtue of a Mortgage executed by Kenneth Lilly, dated January 23, 2004, and Recorded/registered on March 18, 2004 in the office of the Recorder/Registrar of Deeds of Cook County, Illinois, as Document No. 0407840256, to secure a note in the principal sum of $8,000.00;

Lorna Barrios Dawkins, by virtue of a Mortgage executed by Kenneth Lilly, dated January 23, 2004, and Recorded/registered on March 18, 2004 in the office of the Recorder/Registrar of Deeds of Cook County, Illinois, as Document No. 0407840256, to secure a note in the principal sum of $8,000.00;

(M)  Names of persons who executed the Note, Assumption Agreement(s), or Personal Guarantee:
    Kenneth Lilly

Please note that no personal deficiency will be sought against any party who has received a Chapter 7 discharge.

(N) Capacity in which Plaintiff brings this foreclosure: Plaintiff is the legal holder of the indebtedness or the servicing agent for the legal holder of the indebtedness. Furthermore, if applicable, an assignment of mortgage was recorded as follows:

Assignment recorded as Document Number:

(O) Facts in support of a redemption period shorter than the longer of 7 months from the date the mortgagor or, if more than one, all the mortgagors have been served with summons or by publication or have otherwise submitted to the jurisdiction of the court, or 3 months from the entry of the judgment of foreclosure, whichever is later, if sought:

The redemption period shall be determined pursuant to 735 ILCS 5/15-1603.

(P) Statement that the right of redemption has been waived by all owners of redemption: There has been no executed waiver of redemption by all owners of redemption, however Plaintiff alleges that it is not precluded from accepting such a waiver of redemption by the filing of this complaint.

(Q) Facts in support of request for attorneys' fees and of costs and expenses, if applicable: The subject mortgage provides for payment of attorney fees, court costs, and expenses in the event of a default under the mortgage.

(R) Facts in support of a request for appointment of mortgagee in possession or for appointment of a receiver, and identity of such receiver, if sought: Unless otherwise alleged, Plaintiff will pray for said relief after the filing of the instant foreclosure action by separate petition if such relief is sought.

(S) Offer to the mortgagor in accordance with Section 15-1402 to accept title to the real estate in satisfaction of all indebtedness and obligations secured by the mortgage without judicial sale, if sought: No allegation of an offer is made however Plaintiff alleges that it is not precluded from making or accepting such offer by the filing of the instant foreclosure action.

(T) Name or names of defendants whose rights to possess the mortgaged real estate, after the confirmation of a foreclosure sale, are sought to be terminated and, if not elsewhere stated, the facts in support thereof:

Kenneth Lilly;

4. Plaintiff avers that in addition to persons designated by name herein and the Unknown Defendants herein before referred to, there are other persons, and/or non-record claimants who are interested in this action and who have or claim some right, title, interest or lien in, to or upon the real estate, or some part thereof, in this Complaint described, including but not limited to the following:

Page 3 of 4

known Owners and NonRecord Claimants, if any.

That the name of each of such persons is unknown to Plaintiff and on diligent inquiry cannot be ascertained, and all such persons are therefore made party defendants to this action by the name and description of UNKNOWN OWNERS and NONRECORD CLAIMANTS.

## REQUEST FOR RELIEF

**WHEREFORE, THE PLAINTIFF REQUESTS:**

(i)  A judgment of foreclosure and sale.

(ii)  An order granting a shortened redemption period, if sought.

(iii)  A personal judgment for deficiency, if applicable and sought, and only against parties who have not received a Chapter 7 bankruptcy discharge.

(iv)  An order granting possession, if sought.

(v)  An order placing the mortgagee in possession or appointing a receiver, if sought.

(vi)  A judgment for attorneys' fees, costs and expenses, if sought.

(vii)  For the Appointment of a Selling Officer, if deemed appropriate by this court.

(vii)  Such other and further relief as the Court deems just.

Deutsche Bank National Trust Company, as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-W5

BY: _____
CODILIS & ASSOCIATES, P.C.
Its Attorneys

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
ARDC #00468002
14-07-6875
Client # 19004258

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

Deutsche Bank National Trust Company, as Trustee for
Asset-Backed Pass-Through Certificates, Series 2004-W5
PLAINTIFF

vs.

No. 07 CH 10841

Kenneth Lilly; Jeffrey T. Dawkins; Lorna Barrios
Dawkins; Unknown Owners and Nonrecord Claimants

DEFENDANTS

## MORTGAGE FORECLOSURE SUMMONS

**To Each Defendant:** YOU ARE SUMMONED and required to file an answer to the complaint in
this case, a copy of which is hereto attached, or otherwise file your appearance, and pay the
$163.00 fee, in the Office of the Clerk of this Court in Room 802 of the Richard J. Daley Center,
50 W. Washington St., Chicago, Illinois, 60602.

### SEE IMPORTANT INFORMATION ON THE FOLLOWING PAGE

You must file within 30 days after service of this summons, not counting the day of service. IF
YOU FAIL TO DO SO, A JUDGMENT BY DEFAULT MAY BE TAKEN AGAINST YOU FOR
THE RELIEF ASKED IN THE COMPLAINT, A COPY OF WHICH IS HERETO ATTACHED.

**To the Officer:** This summons must be returned by the officer or other person to whom it was
given for service, with endorsement of service and fees, if any, immediately after service. If
service cannot be made, this summons shall be returned so endorsed. This summons may not be
served later than 30 days after its date.

**NOTE: Pursuant to the Fair Debt Collection Practices Act you are advised that this law firm is deemed to be a
debt collector attempting to collect a debt and any information obtained will be used for that purpose.**

WITNESS, _____, 20___

_____
Clerk of Court

Date of Service _____, 20___
(To be inserted by officer on copy left with
defendant or other person)

Codilis & Associates, P.C.
Attorneys for Plaintiff
15W030 North Frontage Road, Suite 100
Burr Ridge, IL 60527
(630) 794-5300
Cook #21762
ARDC #00468002
14-07-6875
Client # 19004258

## PLEASE SERVE THE FOLLOWING DEFENDANTS AT THE FOLLOWING ADDRESSES:

Kenneth Lilly (0102), 17807 S. Tanglewood Court, Hazel Crest, IL 60429 (Cook)

Kenneth Lilly (MA)  (0103), 9006 S. Merrill Avenue, Chicago, IL 60617 (Cook)

Jeffrey T. Dawkins (0201), 17807 S. Tanglewood Court, Hazel Crest, IL 60429 (Cook)

Lorna Barrios Dawkins (0301), 17807 S. Tanglewood Court, Hazel Crest, IL 60429 (Cook)


THANK YOU

14-07-6875

K

**RECORD AND RETURN TO**
C-Bass Loan Asset Management, LLC
c/o Litton Loan Servicing, LP
4828 Loop Central Drive
Houston, Texas 77081
Post Due Diligence Dept - 7th Floor
18 004258

Loan Number: 0054421797 - 9701



Doc#: 0723426145 Fee: $28.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 08/22/2007 02:49 PM Pg: 1 of 3

This form was prepared by: Argent Mortgage Company, LLC          at
Address: 2550 Golf Road, East Tower, 10th Floor  Rolling Meadows, IL 60008
Tel. No.: (888)311-4721

## RECORD FIRST ASSIGNMENT OF MORTGAGE

For Value Received, the undersigned holder of a Mortgage (herein "Assignor" whose address is
One City Boulevard West  Orange, CA 92868
does hereby grant, sell assign, transfer and convey, unto the_____
_____Ameriquest Mortgage Company_____ (herein "Assignee"),
whose address is____1100 Town and Country Road, Suite 200, Orange, CA 92868_____,
a certain Mortgage dated 01/22/04 , made and executed by
KENNETH LILLY, An Unmarried Man

to and in favor of Argent Mortgage Company, LLC          upon the following described property situated
in  COOK  County, State of Illinois.

"LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

Such Mortgage having been given to secure payment of  one hundred forty-four thousand and 00/100
($  144,000.00  )
which Mortgage is of record in Book, Volume, or Liber No. , at page # Doc # 0407840155
(or as No.) of the COUNTY Records of  COOK County,     #Tax ID# 28-36-112-612
State of Illinois, together with the note(s) and obligations therein described and the money due and to
become due thereon with interest, and all rights accrued or to accrue under such Mortgage.
     TO HAVE AND TO HOLD the same unto Assignee its successors and assigns , forever, subject
only to the terms and conditions of the above-described Mortgage.

**ATTN: DOC CONTROL**
**/ ASSIGNMENTS**

CODILIS & ASSOCIATES P.C.
15W030 NORTH FRONTAGE ROAD
SUITE 100
BURR RIDGE, IL 60527

# BOX 70

07-6875

*L*

**RECORD AND RETURN TO**
C-Bass Loan Asset Management, LLC
c/o Litton Loan Servicing, LP
4828 Loop Central Drive
Houston, Texas 77081
Post Due Diligence Dept. - 7th Floor
19004258

Loan Number: 0054421797 - 9701



Doc#: 0723426146 Fee: $28.00
Eugene "Gene" Moore
Cook County Recorder of Deeds
Date: 08/22/2007 02:49 PM Pg: 1 of 3

This form was prepared byAmeriquest Mortgage Company                at
Address: 1100 Town and Country Road, Suite 200, Orange, CA 92868
Tel. No.: (714)541-9960

RECORD SECOND    **ASSIGNMENT OF MORTGAGE**

For Value Received, the undersigned holder of a Mortgage (herein "Assignor" whose address is

1100 Town and Country Road, Suite 200, Orange, CA 92868

does hereby grant, sell assign, transfer and convey, unto the ✗✗

_____ (herein "Assignee"),

whose address is _____

a certain Mortgage dated 01/22/04 , made and executed by

KENNETH LILLY, An Unmarried Man                **Deutsche Bank National Trust**
                                                **Company, as Trustee for Asset-**
                                                **Backed Pass Through Certificates,**
                                                **Series 2004-W5** .

to and in favor of Ameriquest Mortgage Company        upon the following described property situated
in COOK County, State of Illinois.

        "LEGAL DESCRIPTION ATTACHED HERETO AND MADE A PART HEREOF"

Such Mortgage having been given to secure payment of one hundred forty-four thousand and 00/100
                                        ($ 144,000.00 )
which Mortgage is of record in Book, Volume, or Liber No.  , at page ✗ Doc # 0407840255
(or as No.) of the COUNTY Records of COOK County,  #74108 PIN 28-36-12-012
State of Illinois, together with the note(s) and obligations therein described and the money due and to
become due thereon with interest, and all rights accrued or to accrue under such Mortgage.
        TO HAVE AND TO HOLD the same unto Assignee its successors and assigns , forever, subject
only to the terms and conditions of the above-described Mortgage.

                        Page 1 of 2

ATTN: DOC CONTROL
/ ASSIGNMENTS

07-6875

# BOX 70

Form W01 WILL (Short Form) 2007

American Legal Forms, LLC
www.americanlegalforms.com

# Last Will and Testament

I, KENNETH LILLY _____ of HAZEL CREST _____
in the County of COOK _____ and State of ILLINOIS _____
being of sound mind and memory, make, publish and declare, this to be my last WILL and TESTAMENT,
hereby revoking any and prior will(s) and codicil(s) made by me.

FIRST, I order and direct that my Executor pay all my debts, funeral expenses and costs of administration.

SECOND, After the payment of such costs, expenses and debts, I give, devise and bequeath all my estate,
real and personal.

THE PROPERTY LOCATED AT 17807 TANGLEWOOD IN HAZEL CREST,
ILLINOIS 60429...KNOW AS: PIN # 28 36 112 012 0000...
THE LEGAL DESCRIPTION IS ATTACHED.

I GIVE, DEVISE AND BEQUEATH THIS PROPERTY TO MY BROTHER
JEFFREY T. DAWKINS, AS SOLE OWNER.

IF SOMETHING HAPPEN TO JEFFREY T. DAWKINS, SAID PROPERTY
WILL GO TO HIS SONS; JEREMY T. DAWKINS AND JEFFREY M
DAWKINS...DIVIDED EQUAL.

LASTLY, I Make, constitute and appoint as Executor of my will JEFFREY T. DAWKINS _____
and if said Executor fails to become or serve as Executor, then I appoint KENNETH LILLY JR. _____
as Successor Executor, hereby requesting and directing that no surety be required on either Executor's Bond.
My Executor and any Successor Executor are hereby empowered without order of Court to sell at public or
private sale any real or personal property owned by me, without application to or confirmation by any Court.

In Witness Whereof, I have hereto subscribed my name, this 2ND day of FEBRUARY , 2008 .

_Kenneth Lilly_ _____ (Seal)

This Instrument was on the above date thereof signed, sealed, published and declared by the said testator
KENNETH LILLY _____ to be hIS last Will and Testament, in the presence of us who, at testator's
request, and in testator's presence and in the presence of each other, have subscribed our names hereto as
witnesses, each of us believing testator to be of sound and disposing mind and memory, and under no undue
influence.

CRAIG LONG _____          17804 TANGLEWOOD, HAZEL CREST
          (WITNESS)                           (ADDRESS)
FREDDIE GREEN _____       17812 TANGLEWOOD, HAZEL CREST
          (WITNESS)                           (ADDRESS)
FRANK HALL _____          8128 S. EMERALD, CHICAGO, IL
          (WITNESS)                           (ADDRESS)

(NOTE TO WITNESSES: See other side of this page!)



# Cook County
# Clerk of the Circuit Court
## Electronic Docket Search
### Chancery, Domestic/Child Support, Civil and Law Divisions

Case Information Summary for Case Number
2008-L-001988

Filing Date: 2/21/2008
Division: Law Division
Ad Damnum: $163000.00

Case Type: STATUTORY ACTION
District: First Municipal
Calendar: V

### **Party Information**

**Plaintiff(s)**
LILLY KENNETH

**Attorney(s)**
PRO SE

DAWKINS JEFFREY

**Date of
Service**

**Defendant(s)**

15W030NORTH FRONTAGE

20180 GOERNORS HWY 206

2250 GOLF ROAD

AMC MORTGAGE SERVICES

ARGENT MORTGAGE CO
LLC

DEUTSCHE BANK NATION

**Attorney(s)**

NOONAN & LIEBERMAN
LTD
105 W ADAMS#1100
CHICAGO IL, 60603
(312) 431-1455

EAST TOWER FLOOR 10

LITTON LOAN SERVICING

NOONAN & LIEBERMAN LTD

105 W ADAMS#1100

CHICAGO IL, 60603

(312) 431-1455

OLYMPIA FIELDS IL

PALACE HOME MORTGAGE

ROLLING MEADOWS IL

### Case Activity

Activity Date: 2/21/2008       Participant: LILLY KENNETH

STATUTORY ACTION COMPLAINT FILED

Court Fee: 294.00      Attorney: PRO SE
Ad Damnum Amount: 163000.00

Activity Date: 2/21/2008       Participant: LILLY KENNETH

CASE SET ON STATUS CALL

Date: 5/20/2008      Judge: MCDONALD, BARBARA A
Court Time: 0930

Activity Date: 2/21/2008       Participant: LILLY KENNETH

INDIGENT PERSONS APPLICATION DENIED-BILLING ALLOWED

Date: 4/15/2008      Judge: MADDUX, WILLIAM
Microfilm: LD000142381

Activity Date: 2/21/2008       Participant: LILLY KENNETH

CASE SET ON INDIVIDUAL CALENDAR

Activity Date: 5/20/2008       Participant: DEUTSCHE BANK

FILE APPEARANCE OR JURY DEMAND, ANSWER OR PLEAD - ALLOWED -

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

DEUTSCHE BANK NATIONAL TRUST
COMPANY, AS TRUSTEE FOR ASSET-
BACKED PASS-THROUGH CERTIFICATES,
SERIES 2004-W5

Plaintiff,

-v.-                                        07 CH 10641

KENNETH LILLY, et al

Defendant

## REPORT OF SALE AND DISTRIBUTION

I, the undersigned, an authorized signatory for The Judicial Sales Corporation, selling officer appointed in the matter captioned above, do hereby report that:

That pursuant to a Judgment of Foreclosure and Sale entered herein, the plaintiff advertised the following described real estate to be sold at public auction to the highest bidder for cash on December 27, 2007 and continued to February 22, 2008, at the office of The Judicial Sales Corporation, One South Wacker Drive - 24th Floor, CHICAGO, IL, 60606, as set forth in the certificate of publication attached hereto and made a part hereof;

That an agent of The Judicial Sales Corporation first offered said real estate for sale separately, and then in combination less than the whole, and having received no bid therefor, an agent of The Judicial Sales Corporation thereupon offered the entire real estate and premises hereinafter described en masse to the highest bidder on the terms specified in said advertisement;

That DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W5 (the plaintiff herein) offered and bid therefor the sum of ONE HUNDRED THIRTY-THREE THOUSAND EIGHT HUNDRED SIX AND 25/100 ($133,806.25) and that being the highest and best bid, an agent of The Judicial Sales Corporation accordingly struck off and sold to said bidder the following described real estate:

LOT 108 IN HILLCREST SUBDIVISION 1ST ADDITION, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 36, TOWNSHIP 36 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as 17807 S. TANGLEWOOD COURT, Hazel Crest, IL 60429

Property Index No. 28-36-112-012.

I, the undersigned, an authorized signatory for The Judicial Sales Corporation, selling officer appointed in the matter captioned above, do hereby further report:

That The Judicial Sales Corporation has executed and delivered to said bidder its Receipt(s) of Sale, copies of which are attached hereto, along with a copy of the Certificate of Sale (if any) delivered to said bidder.

IN THE CIRCUIT COURT OF COOK COUNTY, ILLINOIS
COUNTY DEPARTMENT - CHANCERY DIVISION

DEUTSCHE BANK NATIONAL TRUST COMPANY,
AS TRUSTEE FOR ASSET-BACKED PASS-
THROUGH CERTIFICATES, SERIES 2004-W5

        Plaintiff,

        -v.-                07 CH 10641

KENNETH LILLY, et al

        Defendant

### MOTION FOR ORDER APPROVING
### REPORT OF SALE AND DISTRIBUTION

NOW COMES THE PLAINTIFF, DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W5, by and through its attorneys, CODILIS & ASSOCIATES, P.C., and moves this Court for an Order Approving the Selling Officer's Report of Sale and Distribution and in support thereof states as follows:

1. This is an action to foreclose a note and mortgage held by the Plaintiff.

2. This Court entered a Judgment of Foreclosure and Sale on September 25, 2007.

3. Pursuant thereto, a Judicial Sale was held on February 22, 2008.

4. That 735 ILCS 5/15-1508 requires that a Report of Sale and Distribution be submitted to the Court for review and approval.

5. A copy of the Selling Officer's Report of Sale and Distribution is presented with this motion for the Court's review.

WHEREFORE, the Plaintiff requests that this Court enter an Order Approving the Selling Officer's Report of Sale and Distribution.

                              By: _____

CODILIS & ASSOCIATES, P.C.
15W030 NORTH FRONTAGE ROAD, SUITE 100
BURR RIDGE IL 60527
(630) 794-5300
Attorney File No. 14-07-6875
Attorney ARDC No. 00468002
Attorney Code. 21762

Case Number: 07 CH 10641



Report of Sale and Distribution

That the proceeds of said sale will, upon confirmation of the sale, be disbursed as follows:

To the plaintiff:

| | | | |
|---|---|---|---|
| 1. | The amount due under judgment | | $115,352.88 |
| 2. | Interest thereon (excluding attorney's fees) from date of judgment (11/27/2007) to date of sale (02/29/2008) at 9% per annum | | $2,626.53 |
| 3. | Publication costs | | $ 415.00 |
| 4. | Post judgment advances | | |
| | Racer | $ 15.00 | |
| | Taxes | $3,685.50 | |
| | Total Advances | | $3,700.50 |

| | |
|---|---|
| Subtotal | $122,094.91 |
| To the Selling Officer, as commission | $ 300.00 |
| Total Amount Due | $122,394.91 |
| Total Proceeds of Sale | $102,000.00 |
| Surplus or (Deficiency) | ($20,394.91) |

Date: February 29, 2008

Attorney File No.: 14-07-F232

Respectfully submitted,
The Judicial Sales Corporation

By: _____

THE JUDICIAL SALES CORPORATION One South Wacker Drive, 24th Floor, Chicago, IL 60606-4650 (312) 236-SALE

NOTE: Pursuant to the Fair Debt Collection Practices Act, you are advised that Plaintiff's attorney is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.



Report of Sale and Distribution

That upon confirmation of this sale, The Judicial Sales Corporation will execute and deliver a Deed to said bidder in accordance with said judgment and law.

That the proceeds of said sale will, upon confirmation of the sale, be disbursed as follows:

To the plaintiff:

| | | | |
|---|---|---|---|
| 1. | The amount due under judgment | | $163,812.83 |
| 2. | Interest thereon (excluding attorney's fees) from date of judgment (09/25/2007) to date of sale (02/22/2008) at 9% per annum | | $5,996.38 |
| 3. | Publication costs | | $ 415.00 |
| 4. | Post judgment advances | | |
| | racer | $ 15.00 | |
| | Total Advances | | $ 15.00 |

| | | |
|---|---|---|
| Subtotal | | $170,239.21 |
| To the Selling Officer, as commission | | $ 300.00 |
| Total Amount Due | | $170,539.21 |
| Total Proceeds of Sale | | $133,806.25 |
| Surplus or (Deficiency) | | ($36,732.96) |

Date: February 22, 2008

Respectfully submitted,
The Judicial Sales Corporation

By:

THE JUDICIAL SALES CORPORATION One South Wacker Drive, 24th Floor, Chicago, IL 60606-4650 (312) 236-SALE

Attorney File No.: 14-07-6875

NOTE: Pursuant to the Fair Debt Collection Practices Act, you are advised that Plaintiff's attorney is deemed to be a debt collector attempting to collect a debt and any information obtained will be used for that purpose.

Order Approving Report of Sale

That the Mortgagee's fees and costs arising between the entry of the Judgment of Foreclosure and Sale and the date of sale are approved;

That there shall be an IN REM deficiency judgment entered in the sum of $36,732.96 with interest thereon as by statute provided, against the subject property

That ~~any~~ Special Right to Redeem, if applicable, pursuant to 735 ILCS 5/15-1604, shall expire 30 days after entry of this Order; and

735 ILCS 5/9-117 is not applicable to this order entered pursuant to Article 15 (IMFL).

That upon request by the successful bidder or its assigns and provided that all required payments have been made pursuant to 735 ILCS 5/15-1509, the Selling Officer shall execute and deliver to the successful bidder or assignee a deed sufficient to convey title.

IT IS FURTHER ORDERED:

That the successful bidder, or its assigns, is entitled to and shall have possession of the premises as of a date 30 days ( _____ ) after entry of this Order, without further Order of Court, as provided in 735 ILCS 5/15 – 1701;

That the Sheriff of Cook County is directed to evict and dispossess KENNETH LILLY, LORNA BARRIOS DAWKINS from the premises commonly known as 17807 S. TANGLEWOOD COURT, Hazel Crest, IL, 60429

The Sheriff cannot evict until 30 days after the entry of this order.

IT IS FURTHER ORDERED that the Deed to be issued hereunder is a transaction that is exempt from all transfer taxes, either state or local, and the County Recorder of Deeds is ordered to permit immediate recordation of the Deed issued hereunder without affixing any transfer stamps.

A copy of this order shall be sent via regular mail to all defendants within 7 days.

Associate Judge Franklin Ulyses Valderrama

Date: _____        ENTER:

APR 15 2008

Circuit Court - 1968

_S. Valderrama_
Judge

CODILIS & ASSOCIATES, P.C.
15W030 NORTH FRONTAGE ROAD, SUITE 100
BURR RIDGE, IL 60527
(630) 794-5300
Attorney File No. 14-07-6875
Attorney ARDC No. 00468002
AttorneyCode. 21762

## JUDICIAL SALE DEED

THE GRANTOR, The Judicial Sales Corporation, an Illinois Corporation, pursuant to and under the authority conferred by the provisions of an Order Appointing Selling Officer and a Judgment entered by the Circuit Court of Cook County, Illinois, on September 25, 2007, in Case No. 07 CH 10641, entitled DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W5 vs. KENNETH LILLY, et al, and pursuant to which the premises hereinafter



Doc#: 0811305198 Fee: $40.00
Eugene "Gene" Moore RHSP Fee:$10.00
Cook County Recorder of Deeds
Date: 04/22/2008 02:10 PM Pg: 1 of 3

described were sold at public sale pursuant to notice given in compliance with 735 ILCS 5/15-1507(c) by said grantor on February 22, 2008, does hereby grant, transfer, and convey to DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ASSET-BACKED PASS-THROUGH CERTIFICATES, SERIES 2004-W5 the following described real estate situated in the County of Cook, in the State of Illinois, to have and to hold forever:

LOT 108 IN HILLCREST SUBDIVISION 1ST ADDITION, BEING A SUBDIVISION OF PART OF THE SOUTHWEST 1/4 OF THE NORTHWEST 1/4 OF SECTION 36, TOWNSHIP 36 NORTH, RANGE 13 EAST OF THE THIRD PRINCIPAL MERIDIAN, IN COOK COUNTY, ILLINOIS.

Commonly known as 17807 S. TANGLEWOOD COURT, Hazel Crest, IL 60429

Property Index No. 28-36-112-012

Grantor has caused its name to be signed to those present by its Chief Executive Officer on this 16th day of April, 2008.

## BOX 70

## Codilis & Associates, P.C.
Deeds Dept.

The Judicial Sales Corporation

By: _____
Nancy R. Vallone
Chief Executive Officer

State of IL, County of COOK ss, I, Tara B. Odisho, a Notary Public, in and for the County and State aforesaid, do hereby certify that Nancy R. Vallone, personally known to me to be the Chief Executive Officer of The Judicial Sales Corporation, appeared before me this day in person and acknowledged that as such Chief Executive Officer he/she signed and delivered the said Deed pursuant to authority given by the Board of Directors of said corporation, as his/her free and voluntary act, and as the free and voluntary act and Deed of said corporation, for the uses and purposes therein set forth.

Given under my hand and seal on this 16th day of April, 20 08

_____
Notary Public

OFFICIAL SEAL
TARA B. ODISHO
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES NOV. 09, 2011

This Deed was prepared by August R. Butera, The Judicial Sales Corporation, One South Wacker Drive, 24th Floor, Chicago, IL 60606-4650.

Exempt under provision of Paragraph ___L___, Section 31-45
of the Real Estate Transfer Tax Law (35 ILCS 200/31-45).

4/21/08                  M. Almaguee
Date          Buyer, Seller or Representative

Grantor's Name and Address:
**THE JUDICIAL SALES CORPORATION**
One South Wacker Drive, 24th Floor
Chicago, Illinois 60606-4650
(312)236-SALE

Grantee's Name and Address and mail tax bills to:
DEUTSCHE BANK NATIONAL TRUST COMPANY, AS TRUSTEE FOR ASSET-BACKED PASS-
THROUGH CERTIFICATES, SERIES 2004-W5
4828 Loop Central Drive, Suite 100
Houston, TX 77081

Mail To: M. Almaguer
CODILIS & ASSOCIATES, P.C.
15W030 NORTH FRONTAGE ROAD, SUITE 100
BURR RIDGE, IL, 60527
(630) 794-5300
Att. No. 21762
File No. 14-07-6875

# STATEMENT BY GRANTOR AND GRANTEE

The **Grantor** or his agent affirms that, to the best of his knowledge, the name of the **Grantee** shown on the Deed of Assignment of Beneficial Interest in land trust is either a natural person, an Illinois corporation or foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois, or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Dated ~~APR 1 8 2008~~ _____, 20____

Signature: _M. almaguer_
Grantor or Agent

Subscribed and sworn to before me
By the said _M. almaguer_
This _____ day of _APR 1 8 2008_ ,20____
Notary Public _____

OFFICIAL SEAL
JANEL SOLIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/05/11

The **Grantee** or his Agent affirms and verifies that the name of the **Grantee** shown on the Deed or Assignment of Beneficial Interest in a land trust is either a natural person, an Illinois corporation of foreign corporation authorized to do business or acquire and hold title to real estate in Illinois, a partnership authorized to do business or acquire and hold title to real estate in Illinois or other entity recognized as a person and authorized to do business or acquire title to real estate under the laws of the State of Illinois.

Date ~~APR 1 8 2008~~ _____, 20____

Signature: _M. almaguer_
Grantee or Agent

Subscribed and sworn to before me
By the said _M. almaguer_
This _____ day of _APR 1 8 2008_ ,20____ .
Notary Public _____

OFFICIAL SEAL
JANEL SOLIS
NOTARY PUBLIC - STATE OF ILLINOIS
MY COMMISSION EXPIRES:05/05/11

**Note:** Any person who knowingly submits a false statement concerning the identity of **Grantee** shall be guilty of a Class C misdemeanor for the first offense and of a Class A misdemeanor for subsequent offenses.

(Attach to Deed or ABI to be recorded in Cook County, Illinois if exempt under provisions of Section 4 of the Illinois Real Estate Transfer Tax Act.)

*Q*



## CERTIFICATION OF DEATH RECORD

### CHICAGO, ILLINOIS
### MEDICAL CERTIFICATE OF DEATH

**STATE FILE NUMBER** 2009 0063172     **DATE ISSUED** 03/08/2009

| DECEDENT'S LEGAL NAME | | SEX | DATE OF DEATH |
|---|---|---|---|
| KENNETH LILLY SR | | MALE | JULY 26, 2009 |

| COUNTY OF DEATH | AGE AT LAST BIRTHDAY | | DATE OF BIRTH |
|---|---|---|---|
| COOK | 57 YEARS | | MAY 26, 1952 |

| CITY OR TOWN | HOSPITAL OR OTHER INSTITUTION NAME |
|---|---|
| CHICAGO | TRINITY HOSPITAL ADVOCATE |

**PLACE OF DEATH?** INPATIENT

| BIRTHPLACE | SOCIAL SECURITY NUMBER | MARITAL STATUS AT TIME OF DEATH | SURVIVING SPOUSE'S NAME | EVER IN U.S. ARMED FORCES? |
|---|---|---|---|---|
| CAMDEN, AR | 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 | WIDOWED | | NO |

| RESIDENCE | | APT. NO. | CITY OR TOWN | INSIDE CITY LIMITS? |
|---|---|---|---|---|
| 9006 S MERRILL | | | CHICAGO | YES |

| COUNTY | STATE | ZIP CODE | FATHER'S NAME | MOTHER'S NAME PRIOR TO FIRST MARRIAGE |
|---|---|---|---|---|
| COOK | IL | 60617 | THOMAS DAWKINS | LUEVENIA LILLY |

| INFORMANT'S NAME | RELATIONSHIP | MAILING ADDRESS |
|---|---|---|
| DEBORAH RIDDLE | ADMITTING CLERK | 2320 E 93RD STREET, CHICAGO, IL, 60617 |

| METHOD OF DISPOSITION | PLACE OF DISPOSITION | LOCATION - CITY OR TOWN AND STATE | DATE OF DISPOSITION |
|---|---|---|---|
| BURIAL | WASHINGTON MEMORY GARDENS | HOMEWOOD, IL | JULY 31, 2009 ✔ |

**FUNERAL HOME** ALI FUNERAL SERVICES, 12540 S HALSTED STREET, CALUMET PARK, IL, 60827

| FUNERAL DIRECTOR'S NAME | FUNERAL DIRECTOR'S ILLINOIS LICENSE NUMBER |
|---|---|
| OTTO R ALI | 034011799 |

| LOCAL REGISTRAR'S NAME | DATE FILED WITH LOCAL REGISTRAR |
|---|---|
| DAVID ORR | SEPTEMBER 1, 2009 |

**CAUSE OF DEATH**   **PART I**   PNEUMONIA

IMMEDIATE CAUSE
(Final disease or condition resulting in death)

a.

Due to (or as a consequence of):

b. CARDIOMYOPATHY

Information pertaining to the cause of death is prohibited from disclosure due to the confidentiality law of Illinois

Due to (or as a consequence of):

c.

**PART II.** Enter other significant conditions contributing to death but not resulting in the underlying cause given in PART I.

| | WAS AN AUTOPSY PERFORMED? NO |
|---|---|
| | WERE AUTOPSY FINDINGS USED TO COMPLETE CAUSE OF DEATH? N/A |

| DID TOBACCO USE CONTRIBUTE TO DEATH? | FEMALE PREGNANCY STATUS | MANNER OF DEATH |
|---|---|---|
| UNKNOWN | NOT APPLICABLE | NATURAL |

| DATE OF INJURY | TIME OF INJURY | PLACE OF INJURY | INJURY AT WORK? |
|---|---|---|---|
| | | | |

**LOCATION OF INJURY**

**DESCRIBE HOW INJURY OCCURRED:**     IF TRANSPORTATION INJURY, SPECIFY:

| ATTEND THE DECEASED? | DATE LAST SEEN ALIVE | WAS MEDICAL EXAMINER OR CORONER CONTACTED? | DATE PRONOUNCED | TIME OF DEATH |
|---|---|---|---|---|
| YES | JULY 25, 2009 | NO | | 10:47 PM |

| CERTIFIER | DATE CERTIFIED |
|---|---|
| PHYSICIAN | JULY 27, 2009 |

| NAME, ADDRESS AND ZIP CODE OF PERSON COMPLETING CAUSE OF DEATH | PHYSICIAN'S LICENSE NUMBER |
|---|---|
| HIMABINDU KANDIMALLA, 2555 SOUTH KING DRIVE, CHICAGO, ILLINOIS, 60616 | 036112045 |

This is to certify that this is a true and correct copy from the official death record filed with Illinois Department of Health.

David Orr
Cook County Clerk

### ANY ALTERATION OR ERASURE VOIDS THIS CERTIFICATE

Microfilm: LD000181078

Activity Date: 3/29/2011                         Participant: LILLY KENNETH

AMEND COMPLAINT OR PETITION - ALLOWED -

Date: 4/19/2011                Judge: POWELL JOAN E
Microfilm: LD000181078

Activity Date: 3/29/2011                         Participant: LITTON

CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -

Date: 5/3/2011                 Judge: POWELL JOAN E
Court Time: 1000               Microfilm: LD000181078

Activity Date: 3/29/2011                         Participant: DEUTSCHE BANK NATION

ORDER SCANNED

Microfilm: LD000181078

Activity Date: 3/29/2011                         Participant: LITTON LOAN SERVICING

ORDER SCANNED

Microfilm: LD000181078

Activity Date: 5/3/2011                          Participant: LITTON DEUTSCH

EXCHANGE INFORMATION - ALLOWED -

Judge: POWELL JOAN E
Microfilm: LD000242764

Activity Date: 5/3/2011                          Participant: LITTON DEUTSCH

CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -

Date: 6/8/2011                 Judge: POWELL JOAN E
Court Time: 1000               Microfilm: LD000242764

Activity Date: 5/3/2011                          Participant: LITTON LOAN SERVICING

ORDER SCANNED

Microfilm: LD000242764

Activity Date: 6/8/2011                          Participant: LITTON LOAN SERVI

DISMISS, STRIKE OR WITHDRAW A SPECIFIC DEFENDANT - ALLOWED -

Judge: POWELL JOAN E

Microfilm: LD000313827

Activity Date: 6/8/2011                                    Participant: LILLY KENNETH'

CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -

Date: 8/10/2011                          Judge: POWELL JOAN E
Court Time: 0930                         Microfilm: LD000313827

Activity Date: 6/8/2011                                    Participant: LILLY KENNETH

ORDER SCANNED

Activity Date: 8/10/2011                                   Participant: LILLY

CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -

Date: 10/11/2011                         Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 10/11/2011                                  Participant: LILLY KENNETH

CASE SET ON STATUS CALL - CONTINUED -

Date: 11/10/2011                         Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 11/14/2011                                  Participant: LILLY KENNETH

CASE SET ON STATUS CALL

Date: 12/6/2011                          Judge: POWELL JOAN E
Court Time: 0945

Activity Date: 12/7/2011                                   Participant: LILLY KENNETH

CASE SET ON STATUS CALL - CONTINUED -

Date: 1/31/2012                          Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 1/31/2012                                   Participant: LILLY

CASE SET ON STATUS CALL

Date: 3/28/2012                          Judge: CASTIGLIONE, FRANK B.
Court Time: 1000

Activity Date: 3/28/2012                                   Participant: LILLY

CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -

Date: 5/2/2012                                    Judge: POWELL JOAN E
Court Time: 0945

Activity Date: 5/2/2012                           Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 7/9/2012                                    Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 7/9/2012                           Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 8/8/2012                                    Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 8/8/2012                           Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 9/26/2012                                   Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 9/26/2012                          Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 11/7/2012                                   Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 11/7/2012                          Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 1/8/2013                                    Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 1/10/2013                          Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 3/13/2013                                   Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 3/13/2013                          Participant: LILLY KENNETH
CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -
Date: 4/24/2013                                   Judge: POWELL JOAN E
Court Time: 1000

Activity Date: 4/24/2013                                    Participant: LILLY KENNETH

CASE CONTINUED FOR CASE MANAGEMENT CONFERENCE - ALLOWED -

      Date: 6/18/2013                        Judge: POWELL JOAN E
Court Time: 1000

---

Please note: Neither the Circuit Court of Cook County nor the Clerk of the
Circuit Court of Cook County warrants the accuracy, completeness, or the currency
of this data. This data is not an official record of the Court or the Clerk and may
not be represented as an official court record.

If data does not appear in a specific field, we likely do not have the responsive data
in our master database.

Start a New Search