IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| JEFFREY T. DAWKINS, ) | |
| as Executive [sic] of the Estate of Kenneth Lilly, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | No. 13 C 5464 |
| ) | |
| DEUTSCHE BANK NATIONAL TRUST ) | |
| COMPANY AS TRUSTEE FOR ) | |
| ASSET-BACKED PASS-THROUGH ) | |
| CERTIFICATES, SERIES 2004-WS, ) | |
| AMC MORTGAGE SERVICES, and ) | |
| LITTON LOAN SERVICING LP, ) | |
| ) | |
| Defendants. ) | |

MEMORANDUM OPINION AND ORDER GRANTING PLAINTIFF'S MOTION
FOR LEAVE TO PROCEED IN FORMA PAUPERIS AND DENYING
PLAINTIFF'S MOTION FOR ATTORNEY ASSISTANCE

JAMES F. HOLDERMAN, District Judge:

On July 31, 2013, plaintiff Jeffrey T. Dawkins ("Dawkins"), acting as "executive" of the estate of his brother, Kenneth Lilly ("Lilly"), submitted to this court a complaint against defendants Deutsche Bank National Trust Company as Trustee for Asset-Backed Pass-Through Certificates, Series 2004-WS ("Deutsche Bank"), AMC Mortgage Services ("AMC"), and Litton Loan Servicing LP ("Litton") (collectively "Defendants"), alleging that Defendants engaged in unlawful conduct with respect to Lilly's mortgage on property located at 17807 Tanglewood Court in Hazel Crest, Illinois (the "Tanglewood Property"). (Dkt. No. 1 ("Compl.").) Along with the Complaint, Dawkins submitted an "*In Forma Pauperis* Application" and supporting financial affidavit (Dkt. No. 4) and a "Motion for Attorney Representation" (Dkt. No. 5). Jurisdiction over this lawsuit is established under 28 U.S.C. § 1332(a). For the reasons set forth

1

below, Dawkins's application for leave to proceed *in forma pauperis* is granted and Dawkins's motion for attorney representation is denied without prejudice.

BACKGROUND

When reviewing an IFP application for failure to state a claim, the court applies "the same standards that apply to Rule 12(b)(6) dismissals, 'taking all well-pleaded allegations of the complaint as true and viewing them in the light most favorable to the plaintiff.'" *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1027 (7th Cir. 2013) (quoting *Arnett v. Webster*, 658 F.3d 742, 751 (7th Cir. 2011)). The court recites the factual allegations below in accordance with this standard.

Dawkins's claims in this case all relate to a mortgage agreement that Lilly entered into with Argent Mortgage Company on January 23, 2004 (the "Mortgage Agreement") securing $144,000.00 in debt (the "Note") for the Tanglewood Property. Defendant AMC originally serviced Lilly's mortgage loan from January 23, 2004, until January 3, 2007. (Compl. ¶ 8, 19.) On June 1, 2005, Lilly's monthly mortgage payment increased from $1,001.95 to $2,142.37 for purposes of covering Lilly's real estate taxes and associated interest. (*Id.* ¶ 10-13.) Dawkins successfully negotiated a lower monthly payment of $1,720.07 on behalf of his brother, Lilly, in October 2005, after a conversation in which an AMC representative told Dawkins that the $2,142.37 monthly payment exceeded the permitted limits set for maximum loan charges. (*Id.* ¶¶ 15-18.) AMC did not refund any money to Lilly, however, or reduce the principal owed on the mortgage loan. (*Id.* ¶ 45.)

Approximately fourteen months later, on January 3, 2007, defendant Litton began servicing Lilly's mortgage loan. (*Id.* ¶ 19.) On March 4, 2007, Dawkins negotiated a forbearance agreement with Litton on behalf of his brother, Lilly, who was behind on his

2

monthly loan payments ("Forbearance Agreement"). (*Id.* ¶ 22.) Dawkins paid Litton $5,000.00 on March 5, 2007, in accordance with the Forbearance Agreement, and Lilly signed the agreement on March 8, 2007. (*Id.* ¶¶ 24-26.) Despite the executed Forbearance Agreement, defendant Deutsche Bank filed a complaint to foreclose on the Tanglewood Property on April 18, 2007. (*Id.* ¶ 32 (citing Case No. [07] CH 10641).) The underlying Mortgage Agreement was not assigned to Deutsche Bank until August 22, 2007. (*Id.* ¶¶ 34-36.) Ultimately, Lilly purchased the Tanglewood Property from Deutsche Bank at the judicial sale on February 29, 2008, and the sale was confirmed on April 15, 2008. (*Id.* ¶¶ 39-40.) Lilly passed away fifteen months later, on July 26, 2009. (*Id.* ¶ 41.)

## LEGAL STANDARDS

Requests to proceed *in forma pauperis* ("IFP") are reviewed under 28 U.S.C. § 1915. To ensure that indigent litigants have meaningful access to the courts, § 1915 allows an indigent litigant to commence an action in federal court without paying the administrative costs of the lawsuit. *Denton v. Hernandez*, 504 U.S. 25, 27 (1992); *Neitzke v. Williams*, 490 U.S. 319, 324 (1988). The court must deny a request to proceed IFP if (1) the allegation of poverty is untrue; (2) the action is frivolous; (3) the action fails to state a claim; or (4) the action seeks monetary relief against an immune defendant. 28 U.S.C. § 1915(e)(2). As the Seventh Circuit has recently re-iterated, § 1915(e)(2) "directs district courts to screen all complaints accompanied by an IFP request for failure to state a claim, among other things." *Luevano*, 722 F.3d at 1018.

Federal courts are authorized by statute to "request an attorney to represent any person unable to afford counsel." 28 U.S.C. § 1915(e)(1); *see also Pruitt v. Mote*, 503 F.3d 647, 653 (7th Cir. 2007). While the court's decision to appoint counsel is discretionary, the Seventh Circuit has directed trial courts to follow a two-step approach, asking "(1) has the indigent

3

plaintiff made a reasonable attempt to obtain counsel or been effectively precluded from doing so; and if so, (2) given the difficulty of the case, does the plaintiff appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654-55 (citing *Farmer v. Haas*, 990 F.2d 319, 321-22 (7th Cir. 1993)). "The first step in this analysis . . . is a threshold question the district court must ask before ruling on a § 1915(e)(1) motion." *Id.* at 655. "The inquiry into the plaintiff's capacity to handle his own case is a practical one, made in light of whatever relevant evidence is available on the question." *Id.*

ANALYSIS

A.  Dawkins's IFP Application

The court begins its analysis by screening Dawkins's Complaint for failure to state a claim.

Dawkins alleges in Count I that AMC charged Lilly excessive fees in violation of "applicable law" and that AMC is liable for failing to refund the overage in accordance with the procedures set forth in the Mortgage Agreement. (Compl.¶¶ 43-49 (citing Ex. A ("Mortg. Agmt.") ¶ 14).) Dawkins claims as damages five months of "an overage monthly mortgage payment of $423.30." (*Id.* ¶ 46.) Although Dawkins appears to have alleged an identical claim against AMC in ongoing litigation in the Circuit Court of Cook County, Case Number 2008-L-001988, (*id.* ¶¶ 38, 42; *see also* Ex. R (state court docket (most recent entry noting "case continued"))), the ongoing litigation in state court is not an impediment to Dawkins pursuing his claim in federal court. *See Copeland v. Tom's Foods, Inc.*, 456 Fed. App'x 592, 594 (7th Cir. 2012) ("federal courts may, as a general matter, entertain suits parallel to actions ongoing in state court") (citing *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 292 (2005)). Under Illinois common law, "actions for breach of contract survive the death of a plaintiff."

4

*Williams v. Palmer*, 532 N.E.2d 1061, 1063 (Ill. App. Ct. 3d Dist. 1988). Accordingly, as executor of Lilly's estate with respect to the Tanglewood Propety, Dawkins is a proper plaintiff. At this point in the litigation, after an initial screening of the Complaint, the court makes the preliminary assessment that Count I adequately states a claim for which relief can be granted.

Dawkins next alleges in Count II that Litton and Deutsche Bank are liable for breach of the Forbearance Agreement and for breach of the Mortgage Agreement, because they initiated foreclosure proceedings at a time when the Mortgage Agreement was subject to the debt management plan set forth in the Forbearance Agreement, and Lilly was therefore not in default. (Compl. ¶¶ 50-80 (citing Mortg. Agmt. ¶¶ 12, 19).) Dawkins claims as damages the $5,000.00 paid in consideration of the Forbearance Agreement. (*Id.* ¶ 80.) Whether Dawkins has named the correct defendants in Count II, especially in light of the allegation that the Mortgage Agreement was not assigned to Deutsche Bank until August 22, 2007, is a question that is best resolved after Litton and Deutsche Bank have had an opportunity to respond to the Complaint. At this preliminary stage, the court concludes that Count II adequately states a claim for which relief can be granted.

Dawkins similarly alleges in Count III that Litton and Deutsche Bank are liable for violations of the High Risk Home Loan Act, 815 ILCS 137/100(b) and (d), because Litton and Deutsche Bank initiated foreclosure proceedings at a time when the Mortgage Agreement was subject to the debt management plan set forth in the Forbearance Agreement, and Lilly was therefore not in default. (Compl. ¶¶ 81-96; *see also* Count II, ¶¶ 52-55, 76.) The court construes Dawkins's Complaint as further asserting a remedy for this alleged violation under the Consumer Fraud and Deceptive Business Practices Act. (*See id.* ¶¶ 140-142; 146-147; *see also* 815 ILCS 137/135(b) ("Any knowing violation of [the High Risk Home Loan Act] constitutes a violation

of the Consumer Fraud and Deceptive Business Practices Act.").) On its face, however, the provisions set forth in Section 100(b) and (d) of the High Risk Home Loan Act do not apply to Lilly's Mortgage Agreement or Forbearance Agreement, because there is no allegation that Lilly or Dawkins engaged the services of an "approved credit counselor" for purposes of negotiating the Forbearance Agreement with Litton. *See* 815 ILCS 137/10 ("'Approved credit counselor' means a credit counselor approved by the Director of Financial Institutions."). Accordingly, Dawkins has failed to state a claim for which relief can be granted in Count III. In *Luevano*, the Seventh Circuit clarified that § 1915(e) requires that IFP applicants be granted leave to amend their complaints "at least once when Rule 15(a) would allow amendment in the case of fee-paying litigants." *Luevano*, 722 F.3d at 1022. In other words, Dawkins is "entitled to amend as a matter of right." *Id.*; *see also* Fed. R. Civ. P. 15(a)(1) (permitting a party to amend its pleading "once as a matter of course" within "21 days after serving it"). On the other hand, "[l]eave to amend need not be granted . . . if it is clear that any amendment would be futile." *Bogie v. Rosenberg*, 705 F.3d 603, 608 (7th Cir. 2013) (citing *Garcia v. City of Chicago*, 24 F.3d 966, 970 (7th Cir. 1994)). Because amendment of Count III is not inherently futile, Count III is dismissed without prejudice and Dawkins is granted leave to file an Amended Complaint on or before October 11, 2013, re-alleging Count III, should he desire to do so consistent with the analysis set forth in this opinion and Rule 11 of the Federal Rules of Civil Procedure.

Next, Dawkins alleges in Count IV that Deutsche Bank unlawfully represented that it was the holder of the Note and had standing to foreclose on the Tanglewood Property in the foreclosure proceedings on April 18, 2007, when in fact the Mortgage Agreement was not assigned to Deutsche Bank until August 22, 2007. (Compl. ¶¶ 97-123; *see also* Count II, ¶ 91.) Dawkins alleges that Deutsche Bank's failure to establish standing to foreclose on the

Tanglewood Property constituted a violation of "Common-Law Liability" and Federal Rule of Civil Procedure 17. (*Id.* ¶¶ 102-103, 105, 110-111.) Dawkins is correct that a plaintiff in a mortgage foreclosure lawsuit must allege and ultimately prove standing under Illinois law. *See Deutsche Bank Nat'l Trust Co. v. Gilbert*, 982 N.E.2d 815, 819-20 (Ill. App. Ct. 2d Dist. 2012) (shifting the burden of proof to the plaintiff mortgagee once the defendant mortgagor has "made out a *prima facie* showing that [the mortgagee] lacked standing"); *see also* 735 ILCS 5/15-1504(a)(3)(N) (requiring mortgage foreclosure complaints to state the "[c]apacity in which plaintiff brings this foreclosure"). Lack of standing is, however, an affirmative defense to a mortgage foreclosure lawsuit, *Gilbert*, 982 N.E.2d at 819, and not a freestanding claim for damages. As Dawkins notes in his Complaint, the remedy for a plaintiff's failure to allege and prove standing is dismissal of the pending lawsuit. (*See* Compl. ¶¶ 104-105, 121-122; *see also Gilbert*, 982 N.E.2d at 821 (citing *Wexler v. Wirtz Corp.*, 809 N.E.2d 1240 (Ill. 2004), for the proposition that "a plaintiff's lack of standing negates his cause of action and requires dismissal of the proceedings").) Dawkins's remedy for the alleged violation, if any, was therefore before the state court presiding over the mortgage foreclosure case. Now that the mortgage foreclosure case in state court has concluded, this court does not have jurisdiction to "undo" the outcome of that proceeding. *See Lance v. Dennis*, 546 U.S. 459, 460 (2006) ("The *Rooker-Feldman* doctrine prevents the lower federal courts from exercising jurisdiction over cases brought by 'state-court losers' challenging 'state-court judgments rendered before the district court proceedings commenced.'") (citation omitted). Count IV is therefore dismissed for failure to state a claim for which relief can be granted. Because the defects in Count IV cannot be cured by amendment, Count IV is dismissed with prejudice.

Count V appears to be a summary of Counts I-IV, adding no new claims against AMC, Litton, or Deutsche Bank, and is therefore dismissed without prejudice for failure to state a claim. In light of the possibility that the court may have misunderstood the nature or scope of the allegations in Count V, Dawkins is granted leave to file an Amended Complaint on or before October 11, 2013, re-alleging Count V, should he desire to do so consistent with the analysis set forth in this opinion and Rule 11 of the Federal Rules of Civil Procedure.

Finally, Dawkins alleges a claim for intentional infliction of emotional distress ("IIED"), alleging that Defendants' conduct was intentional, "extreme and outrageous," and "exceeding the bounds of humane treatment," causing both Lilly and Dawkins "severe anxiety and emotional distress." (Compl. ¶¶ 133-137.) Under Illinois law, IIED claims are subject to a two-year statute of limitations, running from "the date of the last injury suffered or when the tortious acts cease." *Feltmeier v. Feltmeier*, 798 N.E.2d 75, 85, 89 (Ill. 2003) (citing 735 ILCS 5/13-202)). The allegedly tortious conduct in this case all took place between January 2004 and April 2008. This lawsuit was not filed until July 2013, over five years later. "[W]hen the allegations of the complaint reveal that relief is barred by the applicable statute of limitations, the complaint is subject to dismissal for failure to state a claim." *Logan v. Wilkins*, 644 F.3d 577, 582 (7th Cir. 2011). Because amendment of Dawkins's IIED claim would be futile, this claim is dismissed with prejudice for failure to state a claim for which relief can be granted.

Because the court has made the preliminary determination that Counts I and II adequately state claims for which relief can be granted, the court continues its analysis of Dawkins's IFP application by considering the other relevant factors listed in § 1915(e)(2). According to Dawkins's financial affidavit, he was last employed in December 2012, and he has no reportable income or assets. (Dkt. No. 4.) The court notes with disapproval Dawkins's incomplete answer

regarding his former employment. (*See id.* ¶ 2.b. (neglecting to state the beginning and ending dates of last employment, last monthly salary or wages, or name and address of last employer).) In light of Dawkins's sworn allegations in response to the direct questions regarding his financial assets, however, (*id.* ¶¶ 4-9), the court finds that Dawkins is indigent and unable to pay the $400 civil filing fee in this case. Because the court, after review of the allegations, has no basis to believe that Counts I or II are frivolous or seek monetary relief against an immune defendant, Dawkins's application for leave to proceed *in forma pauperis* is granted.

B.   Dawkins's Motion for Attorney Assistance

As noted above, when ruling on Dawkins's motion for attorney assistance this court must consider: (1) whether Dawkins has "made a reasonable attempt to obtain counsel or been effectively precluded from doing so" and, (2) "given the difficulty of the case, does [Dawkins] appear competent to litigate it himself?" *Pruitt*, 503 F.3d at 654-55. In this case, Dawkins reports that he has attempted to engage the services of three different attorneys, but he has been unable to do so due to his lack of funds. (Dkt. No. 5, ¶ 2.) The court finds that Dawkins has made a *prima facie* showing of reasonable efforts to obtain counsel. In reviewing Dawkins's ability to litigate his claims, the court considers Dawkins's "literacy, communication skills, educational level, and litigation experience." *Pruitt*, 503 F.3d at 655. Dawkins reports in his motion for attorney assistance that he is a college graduate, (Dkt. No. 5, ¶ 5), and his filings with the court suggest a degree of proficiency with written materials. Dawkins's Complaint is cogent and well organized, and reflects a general understanding of the law, despite the fact that the majority of Dawkins's claims have been dismissed. At this point in the litigation, Dawkins has done well representing himself. The court does not believe that Dawkins's remaining breach of contract claims against AMC, Litton, and Deutsche Bank will be especially difficult to litigate,

as they are anticipated to largely involve the production and analysis of written documents. The court therefore denies Dawkins's motion for attorney assistance at this point in the litigation. Dawkins is granted leave to file an amended motion for attorney assistance should the case proceed to a point where he feels he is no longer competent to litigate his claims, and the court will evaluate the amended motion in light of any relevant change in circumstances. Any such amended motion should include the specific nature of Dawkins's former field of employment, as well as the name of the college Dawkins attended and the specific degree he earned.

## CONCLUSION

For the reasons set forth above, Dawkins's application for leave to proceed *in forma pauperis*, (Dkt. No. 4), is granted. The Clerk of Court is directed to docket Dawkins's Complaint without payment of the $400 civil filing fee and to provide the U.S. Marshals Service with a copy of the Complaint and a proper form for service on defendants AMC, Litton, and Deutsche Bank. The Marshal is requested to serve the Complaint and appropriate papers on the named defendants. Pursuant to 28 U.S.C. § 1915(e)(2)(B)(ii), the court *sua sponte* dismisses Counts III, IV, and V, as well as Dawkins's IIED claim, for failure to state a claim. Counts I and II remain pending, Counts III and V are dismissed without prejudice, and Count IV and Dawkins's IIED claim are dismissed with prejudice. Dawkins is granted leave to file an Amended Complaint on or before 10/11/13 alleging amended versions of Counts III and V, and including pending Counts I and II, should he desire to do so consistent with the analysis set forth in this opinion and Rule 11 of the Federal Rules of Civil Procedure. The case is set for a report on status at 9:00 a.m. on 10/15/13. Dawkins's motion for attorney representation, (Dkt. No. 5), is denied without prejudice at this time. In advance of the 10/15/13 status hearing, Dawkins is

requested to review the information on the "Settlement Assistance Program for Pro Se Litigants" that has been made available on the court's website, www.ilnd.uscourts.gov.

ENTER:

_____
JAMES F. HOLDERMAN
District Judge, United States District Court

Date: September 12, 2013